PAN AMERICAN COMPUTER CORP. and Endre Guttmann, Plaintiffs,

v.

DATA GENERAL CORP., Defendant,

v.

COMMONWEALTH OF PUERTO RICO, Applicant for Intervention.

Civ. No. 79–459 (TR).

United States District Court, D. Puerto Rico.

March 29, 1983.

Saldaña, López-Baralt & Rey, Rafael Escalera Rodríguez, Santurce, P.R., for plaintiffs.

Albero Picó, Samuel T. Cespedes, McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria, San Juan, P.R., for defendant.

## OPINION AND ORDER

TORRUELLA, Chief Judge.

The issue before us concerns the constitutionality of Puerto Rico's so-called Distributor's Law, more correctly referred to as Law No. 75, of June 24, 1964 (10 L.P.R.A. 278, et seq.) (Law 75). Although this matter was certified to the Supreme Court of Puerto Rico (Puerto Rico Court) for ruling pursuant to the procedure in 32 L.P.R.A. Ap. II R. 53, it declined at that time to pass upon said question. See *Pan American Computer Corp. and Endre Guttmann v. Data General Corp.,* 82 JTS 78.

Recently, however, it ruled in another case that said statute does comply with the requirements of the Constitution of the Commonwealth of Puerto Rico. *Marina Industrial, Inc. v. Brown Boveri Corp.,* No. 0–80–354 (March 18, 1983). Nevertheless, the validity of this law under the United States Constitution remains undecided and it is therefore incumbent upon us to now resolve this issue. Cf. *Fornaris v. Ridge Tool Co.,* 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970).

The pertinent factual background is as follows: On February 8, 1974 Plaintiff Endre Guttmann (Guttmann) entered into a

contract with Defendant Data General Corporation (Data) whereby Guttmann became the exclusive distributor in Puerto Rico for Data's computer-related products. This contract called for an original term of one year with automatic one-year renewals, but was subject to termination upon 30 days notice by either party. Thereafter, Guttmann assigned his rights under the contract to Plaintiff Pan American Computer Corporation (PACC). In fact, after its initial one year term the contract was automatically renewed for several successive periods. However, on November 15, 1978, Data notified PACC that the contract would be terminated as of February 8, 1979.

This termination resulted in the present action being commenced, PACC and Guttmann claiming the protection of Law 75 and seeking equitable and monetary relief. Data raises as a defense the invalidity of Law 75 alleging that the prohibition against termination of a dealer, except for "just cause", is unconstitutional on its face [1] because it violates the obligation of contracts provision of Article I, Section 10 of the Constitution,[2] because it deprives Data of its property without due process of law and denies it equal protection of the laws, and because it imposes an unreasonable burden upon interstate and foreign commerce in violation of Article I, Section 8 of the Constitution. Data also alleges a statutory violation of the Sherman Act (15 U.S.C. 1 *et seq.*) contending that Law 75 results in the elimination of competition in the distribution of products.[3]

A. *The impairment of contract allegation*

■ Data's first claim, dealing with the alleged impairment of its contract, is totally insubstantial. State laws in existence at the time that a contractual obligation is entered into become an integral part of the contract to the same extent as if literally incorporated therein. *Ogden v. Saunders,* 25 U.S. (12 Wheat.) 213, 6 L.Ed. 606 (1827). The contract here in question was entered into a full ten years after Law 75's enactment in 1964. The parties to said contract knew or should have known that in entering into a dealership agreement they were limited in their freedom of action by all existing Puerto Rican laws. Their dealership contract was subject to Law 75. Thus, the Constitutional prohibition against contract impairment is totally inapplicable. Cf. *Warner Lambert v. Tribunal Superior,* 101 D.P.R. 378 (1973).

B. *Substantive due process claims*

We will now examine Data's due process contentions. In considering these arguments we must first establish some basic tenets.

■ Whether by virtue of the Fifth or the Fourteenth Amendments, there is no question but that the due process clause applies fully to Puerto Rico. *Calero Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 668–669, 673, 94 S.Ct. 2080, 2084–2085, 2086, 40 L.Ed.2d 452 (1974); *Rivera Rodriguez v. Popular Democratic Party,* 454 U.S. 938, 102 S.Ct. 472, 70 L.Ed.2d 246 (1982) 457 U.S. 1, 102 S.Ct. 2194, 2199, 72 L.Ed.2d 628 (1982); *Córdova & Simonpietri, Ins. Agency v. Chase Manhattan Bank,* 649 F.2d 36, 39–42 (C.A.1, 1981). In testing Law 75 we therefore must look to the substantive due process standards espoused by the Supreme Court. Within said concept Puerto Rico, as in the case of the States, is "sovereign over matters not ruled by the Constitution." *Pearson Yacht Leasing Co.,* 416 U.S. at 668–669, 673, 94 S.Ct. at 2084–2085, 2086. As a first step in applying said standards, we must characterize Law 75 from its lan-

---

**1.** See Appendix A for a reproduction of the full text of Law 75.

**2.** "No State shall ... pass any ... law impairing the obligation of contracts..."

**3.** Although Data raises several issues grounded on the alleged violation of Puerto Rico's Constitution, in view of the decision in *Marina Industrial, Inc. v. Brown Boveri Corp.,* supra, we need not discuss them.

guage[4] as well as its legislative history,[5] as economic legislation enacted by Puerto Rico in the exercise of its police powers.

■ Until 1934, under the doctrine first announced in *Lochner v. New York,* 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), courts abrogated upon themselves the power of scrutiny over such legislation. Since 1934, however, such supervisory power has fallen in disrepute and not a single state or federal economic regulation has been invalidated on substantive due process grounds. *Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934); *State of Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 470 n. 12, 101 S.Ct. 715, 727 n. 12, 66 L.Ed.2d 659 (1981). Rather, the standard of review for such legislation has become one of determining whether the statute has *any* rational relationship to a permissible state objective. If such is found the statute is held not to violate substantive due process. *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Lincoln Federal Labor Union v. Northwestern Iron & Metal Co.,* 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212 (1949).

The present posture of the Supreme Court is exemplified by its decision in *Nebbia v. New York,* supra. That case dealt with legislation enacted by the New York Legislature creating a board empowered to fix the maximum and minimum prices for milk. The constitutionality of said law was challenged on substantive due process grounds. The Court upheld the law saying: "... the guaranty of due process ... demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained." Id. 291 U.S. at 525, 54 S.Ct. at 510.

Since *Nebbia* the Supreme Court has been even more deferential to legislative

judgment in the area of economic regulation, as is illustrated by the language in *Ferguson v. Skrupa,* supra:

"[It] is up to the legislature, not [the] courts to decide on the wisdom and utility of legislation...

...

Legislative bodies have broad scope to experiment with economic problems ... states have power to legislate against what are found to be injurious practices in their internal and business affairs, so long as their laws do not run afoul of some specific constitutional prohibition or of some valid federal law.

... We refuse to sit as a superlegislature to weigh the wisdom of legislation and we emphatically refuse to go back to the time when courts used the Due Process Clause to strike down state laws regulatory of business and industrial conditions because they may be unwise, improvident or out of harmony with a particular school of thought."

(372 U.S. at 729–732, 83 S.Ct. at 1030–1031)

In *Skrupa* the Supreme Court upheld Kansas' right to regulate the business of debt adjusting.

A similar attitude of almost total withdrawal from review of economic legislation on substantive due process grounds is indicated by the most recent decisions of the Supreme Court. See *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124–125, 98 S.Ct. 2207, 2213–2214, 57 L.Ed.2d 91 (1978); *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,* 439 U.S. 96, 106–107, 99 S.Ct. 403, 410–411, 58 L.Ed.2d 361 (1978); *State of Minnesota v. Clover Leaf Creamery Co.,* supra.

In applying these standards to Law 75, we find the following circumstances.

---

4. See Statement of Motives of Act No. 75. See *Laws of Puerto Rico,* 1964, p. 231; Laws of Puerto Rico, 1966, p. 332. See also *Walborg Corp. v. Tribunal Superior,* 104 D.P.R. 184, 189 (1975); *San Juan Mercantile Corp. v. Canadian Transport Co. Ltd.,* 108 D.P.R. 211, 216–217

(1978); *Warner Lambert Co. v. Tribunal Superior,* supra.

5. 18 Diario de Sesiones, Part 3, 1531; 2 Servicios Legislativos de Puerto Rico, No. 4, pages 630–631 (1964).

698

■ The Statement of Motives of Law 75 fully articulates its purpose. To such effect it states "... that the reasonable stability in the distribution relationship in Puerto Rico is vital to the general economy of the country, to the public interest... In the exercise of its police power the Legislative Assembly deems it necessary to regulate (distribution relationships) ... in order to avoid the abuses caused by certain practices." *Laws of Puerto Rico,* 1964, pg. 231; Laws of Puerto Rico, 1966, pg. 332. In fact, articulation of purposes is not even a requirement for the constitutional validity of legislation. The Supreme Court "... has never insisted that a legislative body articulate its reason for enacting a statute." *U.S. Railroad-Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980). Socio-economic legislation is sustained if *any* articulated or *hypothetical* public purpose affords support for the legislative judgment. See, e.g., *Williamson v. Lee Optical Co.,* supra 348 U.S. at 487, 75 S.Ct. at 464 (upholding an Oklahoma law restricting optometry on the supposition that the Legislature "might have concluded" that eyeglass prescriptions from a medical expert were necessary to promote health); and *Ferguson v. Skrupa,* supra, 372 U.S. at 731, 83 S.Ct. at 1031.

But Data argues that the requirement of "just cause" for unilateral termination or refusal to renew its distributorship contract with PACC is arbitrary because there is no "factual basis" to support the public purposes served by this statute. In support of its contention, Data refers to statements made by the Supreme Court of Puerto Rico in *Warner Lambert Co. v. Tribunal Superior,* 101 D.P.R. 378, 398 (1973), when it decided that the retrospective application of Law 75 impaired the obligations of contracts and violated the constitutional guarantee in Article II Section 7 of the Puerto Rico Constitution. In this same case the Puerto Rico Court specifically recognized that the Legislature has broad power and discretion in dealing with economic and social issues. *Id.* The Puerto Rico Court, however, in *dicta,* declared unfounded the legislative determination that reasonable stability in distribu-

tion relationship in Puerto Rico was vital to the economy, public interest, and welfare. It thus refused to accept, for lack of adequate factual underpinning, the broadest of the various state interests identified by the Legislature. It did not dismiss this broad state interest as untrue or illusory. Its apparent objection, in the context of the retroactive application of Law 75 and the specific constitutional prohibition against the impairment of contracts, was that no facts had been presented to the Legislature or the Puerto Rico Court to justify the other legitimate public purposes identified by the Legislature when Law 75 was enacted.

■ *This* Court, in passing upon the constitutional validity of any statute, including a state statute, is required to apply *Federal* standards of review. We are not bound by state standards of review, particularly when based on *dicta.*

■ The applicable Federal rule of review with respect to statutory ends and means is that "... those challenging the legislative judgment must convince the Court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Clover Leaf Creamery Co.,* 449 U.S. at 456, 464, 101 S.Ct. at 720, 723. Insofar as due process is concerned, under this standard, all the public purposes of Law 75 are permissible, legitimate and could be reasonably conceived to be true. Furthermore nothing in *this* record substantiates the allegation that the just cause requirement is arbitrary because its articulated legislative purpose is without factual basis. This Court, as a matter of law, is not free to reach conclusions contrary to those of the Puerto Rico Legislature concerning legislative facts bearing on the wisdom or utility of the Act. *Clover Leaf Creamery Co.,* 449 U.S. at 456, 461, 101 S.Ct. at 720, 722; *Orrin W. Fox Co.,* 439 U.S. at 106–107, 99 S.Ct. at 410–411, *Governor of Maryland,* 437 U.S. at 124–125, 98 S.Ct. at 2213–2214. This Court must apply the federal minimum rationality due proc-

ess standard of review. *Warner Lambert's dicta,* regarding the absence of factual basis for the legislative determination, was made in an impairment of contract setting and has no binding effect in a due process context. This in fact is the Puerto Rico Court's present interpretation of said *dicta* as illustrated by its decision in *Marina Industrial Inc. v. Brown Boveri Corp.,* supra, at pages 16 *et seq.*

Data next argues that it was unreasonable for the legislators to conclude that the definition of "just cause" in the Statute would promote its legitimate purpose. These arguments are simply Data's evaluations of the wisdom and utility of Law 75. But as previously indicated, the due process clause does not empower the judiciary to "... sit as a superlegislature to weigh the wisdom of legislation nor to decide whether the policy which it expresses offends the public welfare." *Day-Brite Lighting v. Missouri,* 342 U.S. 421, 423, 72 S.Ct. 405, 407, 96 L.Ed. 469 (1952), *Governor of Maryland,* 436 U.S. at 124–125, 98 S.Ct. at 2213–2214; *Orrin W. Fox Co.,* 439 U.S. at 106–107, 99 S.Ct. at 410–411. Such arguments are properly made to the Legislature, not to the Courts.

 Data also challenges the damages provisions of Law 75 on due process grounds. In this respect Law 75 provides that if a principal terminates or refuses to renew a dealership contract without just cause, a tortious act against the dealer is committed and the principal must indemnify the dealer pursuant to a statutory formula spelled out in Section 278(b) of Law 75. See Appendix A.

Again applying the economic due process standard, if it is reasonable for the legislators to believe that said damage formula serves or promotes the public purposes of the statute, and said legislative judgment is not irrational or patently arbitrary, the formula must be upheld. *Williamson v. Lee Optical Co.,* supra; *Clover Leaf Creamery Co.,* 449 U.S. at 464–66, 469–70, 101 S.Ct. at 723–725, 726–727; *Orrin W. Fox Co.,* 439 U.S. at 106–107, 99 S.Ct. at 410–411; *Governor of Maryland,* 437 U.S. at 124–125, 98 S.Ct. at 2213–2214. The question is not whether the legislative judgment expressed in the damage formula is sound or equitable, or whether it comports effectively with the purposes of Law 75. Under the applicable standard of judicial review "... courts do not substitute their social and economic beliefs for the judgment of legislative bodies ... we are not concerned with the wisdom, need or appropriateness of the legislation." *Skrupa,* 372 U.S. at 730, 83 S.Ct. at 1031. Moreover, the challenged damage formula "... carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel v. Indiana,* 452 U.S. 314, 331–332, 101 S.Ct. 2376, 2386–2387, 69 L.Ed.2d 40 (1981).

Using this criteria, the damage formula is constitutional. All the prescribed factors are rationally related to the purposes served by Law 75. The granting of damages for tortious conduct such as are permitted by Law 75 may serve to compensate the injured party and also may tend directly to prevent similar tortious conduct in the future. From a purely compensatory viewpoint, to achieve the purposes of Law 75, the legislator may have rationally determined that the injured dealer should be put in as good a position as he would have been by a full performance of the contract. Under traditional civil law rules, this allows the injured dealer to recover both the gains lost by the tortious termination or refusal to renew, and the losses suffered thereby. See Article 1059, Civil Code of Puerto Rico, 31 L.P.R.A. 3023. The two elements are usually considered separately. In fixing the factors to be included in the damage award, the legislator may also rationally consider the practical difficulties in proving and measuring losses and gains when a going concern is totally or partially destroyed or where its continuation is prevented by the tortious acts of a manufacturer. When the type of wrongful act precludes the ascertainment of the amount of damages with certainty, it may be rational for the legislator to avoid an injustice by fixing standards that facilitate the setting of the amount of damages.

The mitigation of damages contention next made by Data may have been considered by the legislator impractical or ill-suited to the task of determining damages with certainty and without undue complication. Also it may have been the legislator's judgment that such a defense would be inconsistent with the policies of Law 75 because it provides the wrongdoer with an escape route to avoid paying full compensation to the injured dealer. We cannot say that there is a total absence of rational connection by reason of its non-inclusion.

 Data next claims the invalidity of the "good will" elements of Law 75's damage formula. Once again a value judgment issue is improperly raised before the Court. There is nothing necessarily irrational or arbitrary in the legislative conclusion that the "good will" of the dealer's business should be valued without taking into account the manufacturer's investment in achieving consumer acceptance of his products. Such an investment, if any, is equivalent to additional compensation paid by the manufacturer to his dealer above the usual commissions or discounts. The manufacturer in such a situation absorbs part of the expenses of the dealer's business in lieu of higher direct payments to the dealer for sales executed. The "good will" however, belongs to the dealer's business and not to the manufacturer. This may have been the legislator's conclusion. Again, it is rationally related to the purposes of Law 75 and thus ends our inquiry under the economic due process standard of review.

 Defendant also alleges that the award of both good will and loss of profit amounts to a duplication, and that such a duplication is invalid under due process. The injury caused by the manufacturer's wrongful termination or refusal to renew the contract consists of losses suffered as well as gains prevented. To determine the amount of compensation necessary to put the injured dealer in as good a position as he would have been by full performance of the contract, both factors must be considered. In other words, full compensation must include the expected additions to the dealer's wealth and the resulting subtractions therefrom. As previously indicated, the two elements are considered separately under traditional civil law principles. See Article 1059, supra. Hence it is simply wrong to state that damages awarded for the destruction and/or taking over of the dealer's good will results in duplicating the damages awarded for the profits or gains prevented by the tortious termination or refusal to renew the contract. We might add in passing, that since the concept of punitive damages, whose basis is in fact non-compensatory in nature, is constitutional (Cf., *Scott v. Donald,* 165 U.S. 58, 88, 17 S.Ct. 265, 267, 41 L.Ed. 632 (1896)), there would seem to be little basis for holding that Law 75's compensation-based scheme is invalid.

### C. *The equal protection contentions*

In concluding that Law 75 passes the due process muster, we next pass upon Data's equal protection allegations. These need not unduly detain us.

Data believes that Law 75 operates exclusively for the benefit of the class of dealers who have distribution contracts and to the detriment of those who do not have such contracts. According to Data, equal protection does not allow such invidious distinction or the creation of such a separate class.

 To begin with, Data lacks standing to assert the equal protection rights of the dealers or would-be dealers she claims are injured by Law 75. *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Warth v. Seldin,* 422 U.S. 490, 498–501, 95 S.Ct. 2197, 2205–2206, 45 L.Ed.2d 343 (1975); and *Duke Power Co. v. Carolina Envon. Study Group,* 438 U.S. 59, 71–81, 98 S.Ct. 2620, 2629–2634, 57 L.Ed.2d 595 (1978).

We are not here concerned with an "overbreadth" question under the First Amendment. Cf. *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Thus, since Data is not itself in the factual position of a dealer or would-be dealer, it cannot claim a case and controversy under Article III of the Constitution.

■ In any event, the standard of review under the equal protection clause is similar to that under the due process clause. The classifications in question do not involve suspect classes. See *Parham v. Hughes,* 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979); *In re Air Crash Disaster Near Chicago, Ill., etc.,* 644 F.2d 594, 609 (CA7, 1981). Nor do the classifications affect fundamental rights. See *Huff v. White Motor Corp.,* 609 F.2d 286, 298 (CA7, 1979). Thus, the classifications are not to be examined with "strict" or even "intermediate" scrutiny (Cf. *In re Paris Air Crash,* 622 F.2d 1315, 1319 n. 4 (CA9, 1980), but must be examined by the "rational relationship" test. Thus, the classifications are merely required to be rationally related to a legitimate state purpose in order to pass the constitutional standards with regard to the equal protection clause. *Duke Power Co. v. Carolina Environmental Study Group,* supra, *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978); *Williamson v. Lee Optical,* supra.

■ The reasoning in this respect, which we discussed under the due process issues, is fully applicable to the equal protection standard and need not be repeated. We thus rule that Law 75 complies with the equal protection safeguards.

D. *The anti-trust and commerce clause allegations*

■ Lastly, Data alleges that Law 75 violates federal anti-trust laws and places an undue burden upon interstate commerce. Whether Section 2 of the Sherman Act applies to Puerto Rico was an issue left open in *Córdova & Simonpietri Ins. v. Chase Manhattan Bank,* 649 F.2d 36 (1st Cir.1981). Section 2 condemns monopolies, combinations and conspiracies affecting interstate or foreign commerce. In any event, Law 75 does none of these things. Section 1 of the Sherman Act provides that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States or with foreign nations is hereby declared to be illegal." 15 U.S.C. § 1. There are no *facts*

in the record which even remotely show that the regulation imposed by Law 75 conflicts with Section 1 of the Sherman Act. Law 75 does not require an exclusive representation agreement or the appointment of a single dealer for the entire island. See *J. Soler Motors v. Kaiser Jeep Int'l,* 108 D.P.R. 134 (1978). Furthermore, territorial and customer restrictions imposed within the context of such exclusive representation agreements are deemed lawful, if reasonable. *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). Thus, even assuming that Law 75 requires or compels such restrictions, which is contrary to the holding in the *Soler Motors* case, the rule of reason established in *GTE Sylvania,* dictates that the effect of vertical restrictions in reducing intrabrand competition be weighed against possible benefits that these restrictions may have in promoting interbrand competition. If the benefits outweigh adverse effects, then the restraints are reasonable and the particular territorial or customer restrictions would be valid. In this context Law 75 does not on its face conflict with Section 1 of the Sherman Act. Since no facts have been introduced to sustain such a contention, we are hard put to declare that a cross purpose exists between both statutes.

■ Data's arguments based on the Commerce Clause are premised on the assumption that said clause is applicable to Puerto Rico. See *Sea-Land Services, Inc. v. The Municipality of San Juan,* 505 F.Supp. 533, 539–545 (D.P.R.1980). Cf. *Buscaglia v. Ballester,* 162 F.2d 805 (1st Cir.1947), certiorari denied 332 U.S. 816, 68 S.Ct. 154, 92 L.Ed. 393 (1947); and *Caribtow Corporation v. Occupational Safety and Health Review Commission,* 493 F.2d 1064 (1st Cir.1974) certiorari denied 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974). For purposes of the present matter we will assume that Puerto Rico is subject to the restrictions of the negative implications of the Commerce Clause. In this respect the general principles have been formulated by the Supreme Court in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d

174 (1970): Where the state regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, the state regulation will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree and the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. Occasionally the Supreme Court has candidly undertaken a balancing approach in resolving these issues, but more frequently it has spoken in terms of "direct" and "indirect" effects and burdens. See *Exxon Corporation v. Governor of Maryland,* 437 U.S. at 117, 125–129, 98 S.Ct. at 2207, 2213–2215, and *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. at 456, 470–474, 101 S.Ct. at 720, 727–729. The focus of inquiry in determining whether a statute regulates evenhandedly (i.e., without discrimination), and whether its effects on interstate commerce are not excessive in relation to the putative local benefits, must be the practical operation of the statute since the question is often one of degree which must be judged in terms of the probable effects of the state regulation. The record in this case is barren of all factual information concerning the effect, negative or otherwise, of Law 75 on interstate and foreign commerce. Data only presents in its argument mere speculations and unsupported conclusions as to the burden that it claims is imposed on commerce by the statute. One thing is clear, however, Law 75 does not effectuate simple protectionism but rather regulates evenhandedly by prohibiting unilateral termination of *all* dealers' contracts in Puerto Rico, without regard to whether the manufacturers of the products sold are from outside or from within Puerto Rico. Since the statute does not on its face discriminate between interstate and intrastate commerce, the controlling question becomes one of determining, whether there are *incidental* burdens imposed by Law 75 which are "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. at 142, 90 S.Ct. at 847. Data has failed to present facts in support of its allegations of a discriminatory impact.

For the above stated reasons Defendant's Motion to Dismiss is hereby DENIED and Act No. 75 of June 24, 1964 (10 L.P.R.A. 278 *et seq.*) is held to comply with the requirements of the Constitution of the United States.

IT IS SO ORDERED.

## APPENDIX A

10 L.P.R.A. § 278. Definitions

For the purposes of this chapter, the following terms shall have the meanings expressed below, save when the context clearly indicates otherwise:

(a) Dealer: person actually interested in dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concessions or representation of a given merchandise or service;

(b) Dealer's contract: relationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico;

(c) Principal or grantor: person who executes a dealer's contract with a dealer;

(d) Just cause: nonperformance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service.—June 24, 1964, No. 75, p. 231, § 1; June 23, 1966, No. 105, p. 331, § 2, eff. June 23, 1966.

§ 278a. *Termination of relationship*

Notwithstanding the existence in a dealer's contract of a clause reserving to the

parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause. June 24, 1964, No. 75, p. 231, § 2; June 23, 1966, No. 105, p. 331, § 2, eff. June 23, 1966.

§ 278b. *Damages*

If no just cause exists for the termination of the dealer's contract for detriment to the established relationship, or for the refusal to renew same, the principal shall have executed a tortious act against the dealer and shall indemnify it to the extent of the damages caused him, the amount of such indemnity to be fixed on the basis of the following factors:

(a) the actual value of the amount expended by the dealer in the acquisition and fitting of premises, equipment, installations, furniture and utensils, to the extent that these are not easily and reasonably useful to any other activity in which the dealer is normally engaged;

(b) the cost of the goods, parts, pieces, accessories and utensils that the dealer may have in stock, and from whose sale or exploitation he is unable to benefit;

(c) the good will of the business, or such part thereof attributable to the distribution of the distribution of the merchandise or to the rendering of the pertinent services, said good will to be determined by taking into consideration the following factors:

(1) number of years the dealer has had charge of the distribution;

(2) actual volume of the distribution of the merchandise or rendering of the pertinent services and the proportion it represents in the dealer's business;

(3) proportion of the Puerto Rican market said volume represents;

(4) any other factor that may help establish equitably the amount of said good will;

(d) the amount of the profit obtained in the distribution of the merchandise or in the rendering of the services, as the case may be, during the last five years, or if less than five, five times the average of the annual profit obtained during the last years, whatever they may be."

§ 278b.1. *Provisional remedy*

In any litigation in which there is directly or indirectly involved the termination of a dealer's contract or any act in prejudice of the relation established between the principal or grantor and the dealer, the Court may grant, during the time the litigation is pending solution, any provisional remedy or measure of an interdictory nature to do or to desist from doing, ordering any of the parties, or both, to continue, in all its terms, the relation established by the dealer's contract, and/or to abstain from performing any act or any omission in prejudice thereof. In any case in which the provisional remedy herein provided is requested, the Court shall consider the interests of all parties concerned and the purposes of the public policy contained in this chapter.—June 24, 1964, No. 75, p. 231, § 3–A, added May 24, 1971, No. 17, p. 31, eff. May 24, 1971.

§ 278b.2. *Interpretation pursuant to laws of the Commonwealth*

The dealer's contracts referred to in this chapter shall be interpreted pursuant to and ruled by the laws of the Commonwealth of Puerto Rico, and any other stipulation to the contrary shall be void.

Any stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void.—June 24, 1964, No. 75, p. 231, § 3B, added June 23, 1978, No. 75, p. 251, eff. June 23, 1978.

§ 278c. *Waiver of provisions*

The provisions of this chapter are of a public order and therefore the rights determined by such provisions cannot be waived. This chapter being of a remedial character, should, for the most effective protection of such rights, be liberally interpreted; in the adjudgment of the claims that may arise hereunder, the courts of justice shall recognize the right in favor of whom any, effec-

tively, have at his charge the distribution of activities, notwithstanding the corporate or contractual structures or mechanisms that the principal or grantor may have created or imposed to conceal the real nature of the relationship established.—June 24, 1964, No. 75, p. 231, § 4; June 23, 1966, No. 105, p. 331, § 2, eff. June 23, 1966.

### § 278d. *Prescription of actions*

Every action arising from this chapter shall prescribe in three years reckoning from the date of the definite termination of the dealer's contract, or of the performing of the detrimental acts, as the case may be.—June 24, 1964, No. 75, p. 231, § 5; June 23, 1966, No. 105, p. 331, § 2, eff. June 23, 1966."