**ROYAL BED AND SPRING CO., INC.,**
Plaintiff, Appellant,

v.

**FAMOSSUL INDUSTRIA E COMERCIO DE MOVEIS LTDA., Defendant,**
Appellee.

No. 89–1875.

United States Court of Appeals,
First Circuit.

Heard March 6, 1990.

Decided June 26, 1990.

**46**

Francisco M. Lopez Romo, San Juan, P.R., for plaintiff, appellant.

Nydia Maria Diaz–Buxo, Caguas, for defendant, appellee.

Before BREYER and SELYA, Circuit Judges, and RE,* Judge.

RE, Chief Judge.

In this diversity action, plaintiff-appellant, Royal Bed and Spring Co., Inc. (Royal Bed), sued defendant-appellee, Famossul Industria e Comercio de Moveis Ltda. (Famossul), in the United States District Court for the District of Puerto Rico for breach of contract in violation of the Puerto Rico Dealer's Contract Act. Royal Bed appeals from the judgment of the district court which granted Famossul's motion to dismiss on the grounds of *forum non conveniens.*

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade,

The question presented on this appeal is whether the district court erred in dismissing the case on the grounds of *forum non conveniens,* based on its conclusion that Brazil is the most convenient forum.

Since we hold that the district court's determination was reasonable, and not an abuse of discretion, the judgment of the district court is affirmed.

## BACKGROUND

Royal Bed, a corporation organized and existing under the laws of Puerto Rico, distributes furniture products in Puerto Rico. Famossul, a Brazilian corporation, is a manufacturer of furniture products in Brazil. The business relationship between the parties commenced in 1983 with Royal Bed distributing in Puerto Rico the furniture products manufactured by Famossul in Brazil.

On January 26, 1984, Royal Bed and Famossul signed, in Brazil, an agreement entitled "Letter Of Exclusive Distributorship Appointment." This agreement, written in Portuguese, granted Royal Bed the exclusive distributorship of "products, both furniture and other products, which might be made or introduced into [Famossul's] manufacturing line, for the market in Puerto Rico and adjacent islands." The agreement contained a provision which designated "the judicial district of Curitiba, State of Paraná, Brazil, as competent to settle any disputes or interpretations derived from this letter," and that the Brazilian Civil Code would apply "[i]n the case of any violation." The agreement also contained a provision for the adjustment of payments in the event of a devaluation of the cruzeiro against the dollar.

Royal Bed alleges that, during 1986, Famossul terminated the exclusive distributorship and suspended the shipment of goods without just cause. As a result, Royal Bed claims cancellations of orders amounting to $145,712.08, and also damages of $1,000,000 from the loss of goodwill, revenues, and benefits that it would

sitting by designation.

have received had its relationship with Famossul continued.

Contending that it was Royal Bed that breached the agreement, Famossul states that "[t]he maxidevaluation of the cruzeiro, indeed happened and it was made known to [Royal Bed], who wanted an increase of 10% when the increase at Brazil was over $300%." Famossul adds that, based on the amount of payments it was owed, the conditions sought by Royal Bed were "contrary to the contract."

On December 21, 1986, Royal Bed sued in the Superior Court of Puerto Rico, and on August 14, 1987, based on diversity jurisdiction, filed a similar action in the United States District Court for the District of Puerto Rico.

On August 24, 1987, Royal Bed moved for dismissal, without prejudice, of its action in the Superior Court in order to litigate its claim in federal district court. The Superior Court authorized the voluntary dismissal, but imposed costs, expenses and attorney's fees against Royal Bed.

Claiming that the court lacked jurisdiction, based on the doctrines of *forum non conveniens* and *res judicata,* Famossul filed two motions to dismiss with the United States District Court. The motions were referred to a United States Magistrate who, on July 6, 1988, issued a Report and Recommendation suggesting denial of Famossul's motions to dismiss.

Although Famossul's objections to the Magistrate's Report were filed late, the district court, nonetheless, set the case for a general calendar call, and, on August 15, 1989, approved the Magistrate's Report and Recommendation in part, and denied Famossul's motion to dismiss on the basis of *res judicata.* The district court concluded that "[s]ince the voluntary dismissal in the [Superior Court of Puerto Rico] ... was 'without prejudice' it does not produce a preclusive effect, and thus, the present action is not barred by *res judicata.*" *Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.,* No. 87–1054 GG, slip op. at 9 (D.P.R. Aug. 15, 1989).

The district court acknowledged that, in adjudicating a motion for *forum non conveniens,* the court must conduct a case-by-case analysis of convenience and fairness. *See id.* at 3. The court also recognized that Royal Bed had specifically asserted "that Puerto Rico law refuses to enforce forum-selection clauses providing for out-of-state or foreign venues as a matter of public policy." *Id.* at 3; *see* P.R. Laws Ann. tit. 10, § 278b–2 (Supp.1987) (Law 75). The court noted that, given Law 75, the forum-selection clause in the parties' agreement must be integrated into the balancing of considerations. *See Royal Bed,* No. 87–1054 GG at 3. The court noted that the forum-selection clause "should not receive dispositive consideration ... but should rather be considered a significant factor that will figure centrally in our balancing of factors." *Id.* at 4. The court concluded that "the convenience of a Brazil forum, given the parties' expressed preference for that venue, the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power, as well as their familiarity with the procedure and laws of that forum," made Brazil the most convenient forum. *Id.* at 7.

Accordingly, the district court set aside the Magistrate's recommendation to deny Famossul's motion to dismiss on the basis of *forum non conveniens,* and dismissed the present action.

### STANDARD OF REVIEW

In *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981), the United States Supreme Court stated that:

> [t]he *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.

It is important to determine whether the relevant factors have been considered since it has been said that "the [trial] court abus-

es its discretion when it fails to balance the relevant factors." *C.A. La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 (11th Cir.1983).

## DISCUSSION

■ In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947), the Supreme Court stated that the doctrine of *forum non conveniens* is based on the principle "that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." The doctrine permits "a trial court to decline to exercise its jurisdiction ... where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum." *Sibaja v. Dow Chem. Co.*, 757 F.2d 1215, 1218 (11th Cir.), *cert. denied*, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985).

Hence, as stated by the Supreme Court, since the doctrine "was designed as an 'instrument of justice,'" *Williams v. Green Bay & W.R.R.*, 326 U.S. 549, 554, 66 S.Ct. 284, 287, 90 L.Ed. 311 (1946), the question to be answered is "whether the actions brought are vexatious or oppressive or whether the interests of justice require that the trial be had in a more appropriate forum." *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 530, 67 S.Ct. 828, 834–35, 91 L.Ed. 1067 (1947).

### 1. *Applicability of the Forum–Selection Clause*

In this circuit, we have stated that "[t]he doctrine of *forum non conveniens* presupposes at least two forums in which the defendant is amenable to process." *Tramp Oil and Marine, Ltd. v. M/V Mermaid I*, 743 F.2d 48, 50 (1st Cir.1984) (citing *Gulf Oil*, 330 U.S. at 506–07, 67 S.Ct. at 842). We have also noted that "[d]ismissal in one forum is only proper upon a supported finding that another adequate forum exists where the plaintiff can litigate essentially the same claim." *Id.*

In this case, a forum-selection clause in the exclusive distributorship agreement of the parties clearly indicates the existence of an alternate forum to that of Puerto Rico. The agreement expressly provides that the judicial district of Curitiba in Brazil is the proper forum "to settle any disputes or interpretations derived from this [agreement]...." A specific question in this case is the effect that this court should give to the forum-selection clause contained in the agreement of the parties.

According to Royal Bed, since Puerto Rico "has the most significant contacts relating to the ... alleged termination without just cause of [the] contract[,]" the case should be tried in Puerto Rico under Puerto Rican law. Royal Bed asserts that, under the law of Puerto Rico, its rights and obligations under the agreement were protected by the Distributor's Law (Law 75). Pursuant to section 278b–2 of this law, "[a]ny stipulation that obligates a dealer to ... litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be ... considered as violating ... public policy ... and is therefore null and void." P.R. Laws Ann. tit. 10, § 278b–2 (Supp.1987). Hence, Royal Bed concludes that "any action that would imply mere intention of placing a dealers' contract outside the scope of this statute is null and void, as is the provision of this ... contract...."

Famossul contends that "Law 75 was never mentioned nor contemplated" in the agreement, and, if the forum-selection clause is rendered unenforceable by Law 75, "then ... all the rest of the contract might be unenforceable as well." Famossul states that it is not requesting that Law 75 be declared unconstitutional, "but rather tha[t] the parties be bound by their own acts."

In the seminal case of *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court upheld the validity of forum-selection clauses between parties of equal bargaining power. In *The Bremen* case, Zapata, an American corporation, had contracted with Unterweser, a German corporation, to tow Zapata's sea drilling rig from Louisi-

ana to a point off the coast of Italy. The contract between the parties contained a provision which stated that " '[a]ny dispute arising must be treated before the London Court of Justice.' " *The Bremen,* 407 U.S. at 2, 92 S.Ct. at 1909.

While the rig was being towed in international waters, a storm caused serious damage to the rig, and Zapata commenced a suit in admiralty in the United States District Court in Florida. Unterweser moved to dismiss for lack of jurisdiction and *forum non conveniens.*

The district court, relying on a prior decision of the Court of Appeals for the Fifth Circuit, *Carbon Black Export, Inc. v. The SS Monrosa,* 254 F.2d 297 (5th Cir.1958), *cert. dismissed,* 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723 (1959), denied Unterweser's motion to dismiss. In *Carbon Black,* the Court of Appeals had held that forum-selection clauses were unenforceable because "agreements in advance of controversy whose object is to oust the jurisdiction of the courts are contrary to public policy and will not be enforced." 254 F.2d at 300–01. Hence, the district court in *The Bremen* case, "gave the forum-selection clause little, if any, weight." *The Bremen,* 407 U.S. at 6, 92 S.Ct. at 1911.

On appeal, the Court of Appeals for the Fifth Circuit, also relying on the *Carbon Black* decision, affirmed the decision of the district court, and held that *Carbon Black* made forum-selection clauses unenforceable " 'unless the selected state would provide a more convenient forum than the state in which suit is brought.' " *Id.* at 7, 92 S.Ct. at 1912 (quoting *Unterweser Reederei GMBH v. M/S Bremen,* 428 F.2d 888, 894 (5th Cir.1970)). Hence, the Court of Appeals concluded that the forum-selection clause did not require the district court to dismiss on *forum non conveniens* grounds. *See Unterweser,* 428 F.2d at 894.

Stating that "far too little weight and effect were given to the forum clause in resolving this controversy[,]" the Supreme Court reversed. *The Bremen,* 407 U.S. at 8, 92 S.Ct. at 1912. Chief Justice Burger, writing for an 8 to 1 majority, reasoned that "[t]he expansion of American business

and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts." *Id.* at 9, 92 S.Ct. at 1912. Hence, speaking with unmistakable clarity, the Supreme Court held that forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. at 1913.

■ As a practical matter, therefore, it follows from the holding in *The Bremen* case that the burden is upon the party resisting the forum-selection clause to "show that enforcement [of the clause] would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1916. It is also noteworthy that, according to the Supreme Court, a showing of inconvenience as to a foreign forum would not be enough to hold a forum-selection clause unenforceable, especially if that inconvenience was known or contemplated by the parties at the time of their agreement. *See id.* at 16, 92 S.Ct. at 1916–17. Indeed, the Supreme Court stated specifically that "it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 18, 92 S.Ct. at 1917. Consequently, in summary, the Supreme Court stated: "Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *Id.*

The question that has not been resolved, however, is whether the holding of *The Bremen* case, that is, "applying federal judge-made law to the issue of a forum selection clause's validity in admiralty cases, should be extended to diversity cases." *Instrumentation Assocs., Inc. v. Madsen Elecs. (Canada) Ltd.,* 859 F.2d 4, 7 n. 5 (3d Cir.1988); *see also Piper Aircraft,* 454 U.S. at 248 n. 13, 102 S.Ct. at 262 n. 13. More than half a century ago, the Supreme Court established what is known as the

*Erie* doctrine, pursuant to which the federal courts in diversity cases may not promulgate substantive rules of law that control the controversy. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Nonetheless, it is also fundamental that "[f]ederal courts are able to create federal common law ... in those areas where Congress or the Constitution has given the courts the authority to develop substantive law ... or where strong federal interests are involved...." *General Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356 (3d Cir.1986).

In *The Bremen*, for example, federal law applied to the forum-selection clause because, since the case was in admiralty, the Constitution had vested original jurisdiction in the federal courts. *See* U.S. Const. art. III, § 2, cl. 1. Similarly, forum-selection clauses providing for mandatory arbitration in foreign countries have been upheld because "it is the congressional policy manifested in the Federal Arbitration Act [9 U.S.C. § 1 et seq. (1988)] that requires courts liberally to construe the scope of arbitration agreements covered by that Act...." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985); *see also Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 516–17, 94 S.Ct. 2449, 2455–56, 41 L.Ed.2d 270 (1974).

■ In *Sun World Lines, Ltd. v. March Shipping Corp.*, 801 F.2d 1066 (8th Cir. 1986), the Court of Appeals for the Eighth Circuit held that in diversity cases, federal law controlled the enforceability of a forum-selection clause. The *Sun World Lines* case "held that the enforceability of a forum clause ... is clearly a federal procedural issue and that federal law controls." *Id.* at 1069. The court noted that, in deciding that enforceability of the clause "is a procedural matter, we support a policy of uniformity of venue rules within the federal system, as well as the policies underlying *The Bremen*." *Id.*

It has been noted that *forum non conveniens* "is a rule of venue, not a rule of decision." *Sibaja*, 757 F.2d at 1219. The court in *Sibaja* explained that:

[t]he doctrine derives from the court's inherent power, under article III of the Constitution, to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice and oppression. As the Supreme Court observed nearly 100 years ago, "the equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustice, are inherent and equally extensive and efficient."

*Id.* at 1218 (quoting *Gumbel v. Pitkin*, 124 U.S. 131, 144, 8 S.Ct. 379, 383–84, 31 L.Ed. 374 (1888)). It follows, therefore, that state *forum non conveniens* laws "ought not to be" binding on federal courts in diversity cases. *See* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3828 (2d ed. 1986). Since we adopt this view, we decide this case on federal principles and considerations of *forum non conveniens*.

It would also seem clear that, had the transferee forum been a United States District Court, the applicable standard would be found in 28 U.S.C. § 1404(a) (1988). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), the Supreme Court discussed the relevance of a forum-selection clause in light of section 1404(a).

In that case, Stewart, an Alabama corporation, entered into a dealership agreement to market copier products with Ricoh, a nationwide manufacturer with its principal place of business in New Jersey. A clause in the agreement provided " 'that any appropriate state or federal district court located in the Borough of Manhattan, New York City, ... shall have exclusive jurisdiction over any case or controversy arising under or in connection with this Agreement and shall be a proper forum in which to adjudicate such case or controversy.' " *Stewart*, 108 S.Ct. at 2241 n. 1. Alleging that Ricoh had breached the agreement,

Stewart filed a diversity action in the United States District Court for the Northern District of Alabama. Asserting that the forum-selection clause in the agreement required that the case be heard in New York, Ricoh filed a motion to transfer under section 1404(a).

On the grounds that Alabama law controlled the agreement, and that the public policy of Alabama looked unfavorably upon forum-selection clauses, the United States District Court for the Northern District of Alabama denied Ricoh's motion. *See id.* at 2241. Holding that venue is a matter of federal procedure, and that, under *The Bremen* case the forum-selection clause was enforceable as a matter of federal law, the Court of Appeals for the Eleventh Circuit reversed and remanded with instructions to transfer the case. *See id.*

The Supreme Court affirmed. In affirming, the Supreme Court noted that, rather than to have relied on the principles set forth in *The Bremen* case, the court of appeals should have decided whether section 1404(a) itself controlled Ricoh's request to give effect to the parties' contractual choice of venue which provided for a transfer of the case to a Manhattan court. The Supreme Court added: "we hold that it does." *Id.* at 2243.

In its consideration of the forum-selection clause, the Supreme Court reasoned that "[a] motion to transfer under § 1404(a) ... calls on the District Court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause ... will be a significant factor that figures centrally in the District Court's calculus." *Id.* at 2244.

As for the Alabama policy which did not favor forum-selection clauses, the Court noted that section 1404(a) made "it unnecessary to address the contours of state law." *Id.* at 2244 n. 9. The Court deemed that inquiry unnecessary since "Congress has directed that multiple considerations govern transfer within the federal court system, and a state policy focusing on a single concern or a subset of the factors identified in § 1404(a) would defeat that command." *Id.* at 2244–45. In a footnote,

the Supreme Court commented that "[i]f a State cannot preempt a district court's consideration of a forum-selection clause by holding that the clause is automatically enforceable, it makes no sense for it to be able to do so by holding the clause automatically void." *Id.* at 2244 n. 10.

It is clear that the Supreme Court required that the district court consider "factors other than those that bear solely on the parties' private ordering of their affairs. The District Court also must weigh in the balance ... public-interest factors ... that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Id.* at 2244. The *Stewart* case, therefore, teaches that, after considering and balancing all of the private and public interest factors, a district court in a particular case may "in the interest of justice" still "refuse to transfer a case notwithstanding the counterweight of a forum-selection clause...." *Id.*

■ In this case, since we are dealing with a forum-selection clause that refers to a forum outside of the United States, and not within the scope of the statute, section 1404(a) does not apply. Nonetheless, even though a foreign jurisdiction was chosen by the parties, that fact should not preclude the application of the sound principles of *forum non conveniens* enunciated in *Stewart* and similar cases. By their consideration and application, the forum-selection provision in the "Letter of Exclusive Distributorship Appointment" is not given dispositive effect. Rather, it is simply one of the factors that should be considered and balanced by the courts in the exercise of sound discretion. *See Stewart,* 108 S.Ct. at 2245.

Furthermore, in this case, there is no need to consider the constitutionality of Law 75. *See Pan Am. Computer Corp. v. Data Gen. Corp.,* 562 F.Supp. 693 (D.P.R. 1983) (holding that Law 75 is constitutional). Hence, the application of Law 75 is not affected in the courts of the Commonwealth of Puerto Rico. The total relevant factors analysis set forth in *Stewart* permits a "flexible and individualized analysis" which considers "the parties' private

expression of their venue preferences" as well as "public-interest factors of systemic integrity and fairness." *Stewart*, 108 S.Ct. at 2244.

### 2. *Balancing of Private and Public Interest Factors*

In *Piper Aircraft*, the Supreme Court stated "that there is ordinarily a strong presumption in favor of the plaintiff's choice of forum...." 454 U.S. at 255, 102 S.Ct. at 265–66. The Court also noted that "a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum[,]" because "it is reasonable to assume that this choice is convenient." *Id.* at 255–56, 102 S.Ct. at 266 (citation omitted). Notwithstanding that reasonable assumption, the Supreme Court added that the choice of a home forum "may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Id.* at 255, 102 S.Ct. at 266. Indeed, although reference to plaintiff's "home forum" indicates clearly the forum intended by plaintiff, the "home forum" may be in doubt when the facts of the case point to some other forum that may be more appropriate.

The Supreme Court has set forth some of the private interests of litigants that must be considered, such as "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises ...; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. The several public interest factors include:

[a]dministrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.... There is a local interest in having localized controversies decided at home.

*Id.* at 508–09, 67 S.Ct. at 843. It has been noted that the factors listed "were not intended to be exhaustive, but merely to suggest the range of relevant considerations." *C.A. La Seguridad*, 707 F.2d at 1307.

■ In this case, Royal Bed states that "all the equipment sold by ... Royal Bed on behalf of ... Famossul took place in Puerto Rico ... to Puerto Rican accounts and for use in Puerto Rico...." Hence, Royal Bed contends that, since "Puerto Rico ... has the most significant contacts[,]" the balance of private and public interest factors makes Puerto Rico the applicable forum.

Although the district court acknowledged that Royal Bed's choice of a forum was entitled to great deference since it chose a home forum, it nonetheless determined that "we must also take into consideration the convenience of a Brazil forum given the parties' expressed preference for that venue...." *Royal Bed*, No. 87–1054 GG at 3.

Hence, the district court also took into consideration that:

[the] contract [was] signed in Brazil[,] [and] ... drafted in Portuguese. All the furniture provided by [Famossul] and sold by [Royal Bed] in Puerto Rico was manufactured in Brazil. It also appears that [Royal Bed] is no stranger to the judicial system of Brazil since it has previously litigated its disputes in the courts of Brazil and obtained favorable results. Moreover, the contract ... contains a forum-selection clause providing that any legal action arising out of the contract would be brought in Brazil and Brazilian law would apply.

*Id.* at 4.

In giving effect to the validity of the forum-selection clause in *The Bremen* case, the Supreme Court noted that there was strong evidence "that the forum clause was a vital part of the agreement, and it would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations." 407 U.S. at 14, 92 S.Ct. at 1915 (footnote omitted). The holding and *ratio decidendi* of that case

place the burden squarely on the party seeking to avoid the forum-selection clause to show that its enforcement "would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1916. In words particularly applicable here, the Supreme Court stated that "[if] [t]he choice of [a] forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, ... absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *Id.* at 12, 92 S.Ct. at 1914. *See, e.g., Commerce Consultants Int'l, Inc. v. Vetrerie Riunite, S.p.A.,* 867 F.2d 697, 700 (D.C.Cir.1989).

In this case, there is neither over-reaching nor factors that would counsel against the application of the forum selected by the parties in their agreement. Moreover, the district court specifically stated that "here we are faced with a freely negotiated private international agreement where a choice of forum was agreed to in an arm's-length negotiation by experienced and sophisticated businessmen." *Royal Bed*, No. 87–1054 GG at 4–5. There can be no doubt that all pertinent factors were thoroughly considered, and, indeed, the district court added that Royal Bed "is no stranger to the judicial system of Brazil since it has previously litigated its disputes in the courts of Brazil and obtained favorable results." *Id.* at 4.

The sound policy statements articulated in *The Bremen,* which would counsel giving effect to freely negotiated forum-selection clauses, fulfill the reasonable expectations of the parties, are helpful to the courts, and foster a favorable climate for international trade.

In the case before us it is clear that the district court thoroughly considered and properly balanced all of the relevant public and private interests factors for a *forum non conveniens* dismissal. Since the balancing of these factors was reasonable, it cannot be said that the district court abused its discretion.

## CONCLUSION

Since the district court considered and balanced all of the relevant factors and did not abuse its discretion, its conclusion that Brazil is the most convenient forum should not be disturbed. Therefore, the judgment of the district court granting Famossul's motion to dismiss on the grounds of *forum non conveniens* is affirmed.