**RINI WINE CO., INC., Plaintiff,**

v.

**GUILD WINERIES AND DISTILLERIES, Defendant.**

No. C85–144.

United States District Court, N.D. Ohio, E.D.

March 14, 1985.

Bernard S. Goldfarb, Mark V. Webber, Goldfarb & Reznick, Cleveland, Ohio, for plaintiff.

James F. DeLeone, Jack Gregg Haught, Topper, Alloway & Goodman, Columbus, Ohio, for defendant.

## ORDER

BATTISTI, Chief Judge.

Defendant Guild Wineries [hereinafter referred to as "Guild"], a California corporation, has moved for change of venue to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) and 1406(a). Defendant contends that a "choice of forum" clause which appears in the distributorship agreement between the parties places venue for any action arising out of that agreement in the State of California.

Plaintiff contends, *inter alia*, that the "choice of forum" clause is inapplicable in the instant case since its cause of action does not arise solely out of a breach of the distributorship agreement; rather, plaintiff alleges violations of both federal and state antitrust laws. Hence, plaintiff argues its choice of forum here in the Northern District of Ohio should be accorded great weight and accordingly, that venue be retained here.

For the reasons outlined below, Defendant's Motion for Change of Venue is granted.

### I.

Plaintiff Rini Wine Co. ("Rini") is an Ohio corporation with its principal place of business in Cleveland, Ohio. Rini distributes wine, beer and other beverages in Cuyahoga County, Ohio. Rini has been distributing Cribari wine since 1952.

Sometime before June 1981, the defendant, Guild Winery and Distilleries, assumed

production of Cribari wine (whether by purchase or license is not known to the Court). In June 1981, Guild sent Rini a so-called "Standard Form Distributor Agreement" distributorship agreement for Rini to execute. Paragraph 16 of the 20 paragraph agreement states:

LAW OF AGREEMENT. This agreement is to be governed by and construed according to the laws of the State of California and venue for any action entered under the agreement is agreed to be the State of California.

Rini executed the agreement on June 16, 1981. On December 8, 1984, Rini received a letter from Guild dated December 3, 1984 in which Guild stated that it would terminate its distributorship agreement with Rini, effective sixty days from date of receipt of that letter, on February 6, 1985. The parties subsequently stipulated that the termination would not become effective until March 15, 1985.

On December 20, 1984, plaintiff filed suit against defendant in Cuyahoga County [Ohio] Commons Pleas Court. The action was removed on defendant's motion to the United States District Court for the Northern District of Ohio on January 18, 1985. On January 22, 1985, plaintiff filed a five count amended complaint praying for injunctive and compensatory relief. Counts 1 and 2 allege violation of the Sherman Act and Ohio's Valentine Antitrust Act, Ohio Rev.Code Ann. §§ 1331.01–14. Counts 3 and 4 claim violations of the Ohio Trade Practices Act, Ohio Rev.Code Ann. § 1333.-85, specifically the section entitled "Alcoholic Beverages Franchise Act". Count 5 alleges a willful breach of the distributorship agreement on the part of the defendant.

On February 20, 1985, defendant filed the instant motion for change of venue.

## II.

28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1406(a) states "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The Court adopts the reasoning of *Pompei Winery v. Guild Wineries and Distilleries,* Case No. C79–1670, slip op. (N.D. Ohio) (Krupansky, J) and finds its holding applicable and apposite to this case. In that case the same Defendant as the Court has here was alleged to have broken a distributorship agreement in violation of the Ohio Alcoholic Beverages Franchise Act. In addition the distributorship agreement in that case was identical in all material respects to the instant one. For the sake of completeness and responsiveness to nonmovant's arguments, however, the Court will expand on its conclusions as they apply to the facts of the instant case.

Although forum selection clauses were once disfavored, they are now considered "prima facie valid" provided they are reasonable on their face. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)); *In-Flight Devices Comp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir.1972). In order to defeat the forum selection clause, the party opposing enforcement of the clause must meet the burden of showing "enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916.

Plaintiff has not met this burden in the instant case. The agreement that was made on June 16, 1981 shows the parties jointly consenting to venue; there is no allegation of fraud. Plaintiff, however, contends that the clause was part of a standard form agreement, that the clause was not freely bargained, and that it received no extra consideration for these provisions.

It is indeed clear that the Guild distributor agreement is a two-page printed form with blanks provided for the particulars; otherwise the agreement is in boilerplate. There are no modifications on the agreement that Rini and Guild executed; the only additions are the date of the agreement, plaintiff's name and address, the products which are covered by the agreement and the territory covered, all of which are typed into the appropriate blanks. To this extent, the form in the instant case is comparable to the one that was used in *Cutter v. Scott & Fetzer Co.*, 510 F.Supp. 905, 908 (W.D.Wisc.1981).

But the fact that the distributor agreements are boilerplate forms should not inherently defeat the validity of a forum-selection clause. Indeed, it is obvious that the boilerplate forms are not "freely bargained" contracts: the whole purpose of adhesion contractors is to expedite commercial transactions, eliminating the time spent in individual contract negotiations with a particular client. There would be little value in form contracts if extra consideration had to be exchanged for each provision. The true inquiry in examining whether a choice of forum clause is enforceable should not be the formal appearance of the contract but whether the party claiming the clause's invalidity was aware of the provision, could have objected at the time, and had the means of doing so.

Both the Supreme Court in *Bremen* and the court in *Cutter* appear to have followed this approach: their examination is whether there was "fraud, undue influence, or overweening bargaining power." *Bremen*, 407 U.S. at 12, 92 S.Ct. at 1914. The *Cutter* court looked at *bargaining power* not *whether* there was bargaining. In invalidating the clause, the *Cutter* court used the statutory presumption in the Wisconsin Fair Dealership Law that the manufacturer "is assumed to have 'inherently superior economic power and superior bargaining in the negotiation of dealerships.'" *Cutter*, 510 F.Supp. at 908. The parties have not presented, nor is the Court aware from its own examination of the Alcoholic Beverages Franchise Agreement, a similar statutory presumption in Ohio. Section 1333.83 of the Ohio Rev.Code on written franchise agreements merely calls for "every manufacturer of alcoholic beverages [to] contract with or offer in good faith to its distributors a written franchise..." Plaintiff has not alleged excessive bargaining power on the part of Guild or stated that plaintiff was in any way coerced or defrauded into the agreement. There is no reason to believe with such a short agreement of only a few paragraphs that Rini did not know of paragraph 16 at the time of signing. The inconvenience and possible objections that plaintiff would "suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting." *Bremen*, 407 U.S. at 17–18, 92 S.Ct. at 1917. Indeed, it appears that Rini was so willing to continue its arrangement with Guild and preserve the goodwill and business built up over 30 years that it *promptly* executed the form agreement, knowing and forewarned that there had been a change in management. It is unnecessary for all the specific conditions which were present in the *Bremen* case to attend here in order to uphold the validity of the clause. Specifically, whether the clause is a "vital part of the agreement" or the deal was "extraordinary" were merely factors mentioned in *dicta* in *Bremen* which fortified the Court's view that the parties were aware of the clause and intended its effect when they entered into an agreement. These are not necessary conditions to enforcing the instant clause's validity.

Plaintiff's contends that even if the clause were valid, only actions for violation of the distributor agreement would be covered by the forum selection clause. Since plaintiff claims the "predominant claims of [its] amended complaint are other than breach of contract causes of action", plaintiff argues the clause is inapplicable. Essentially, plaintiff alleges this is an antitrust action which also alleges violation of the Ohio Alcoholic Beverages Franchise Act. This Court does not believe determining the nature of this dispute can be deter-

mined simply by counting the number of causes of action and the order in which they appear in the complaint. Rather, the Court must look to the circumstances provoking the instant case. The incident from which this dispute arises is indeed the termination of the distributor agreement between Rini and Guild. Plaintiff has chosen to explain defendant's conduct as an "unlawful combination and conspiracy" in violation of federal and state antitrust laws in its complaint. The question is whether plaintiff's mere characterization of this dispute as an antitrust matter should override the clause in the agreement which it freely entered. The Court thinks not.

Furthermore, plaintiff contends that defendant's agreement to a stipulated extension of the effective termination date is an acknowledgment by defendant that this is an action under the Ohio Alcoholic Beverages Franchise Act, and not simply a breach of contract action. The Court, however, does not believe the stipulation can be so interpreted. The Court is not aware, of course, of the negotiations between counsel as to the contents of the stipulation. However, the stipulation states that "this extension is without prejudice to or waiver of any of the rights of the parties to contest or defend the legitimacy of the cancellation and/or to raise any other issues pending or to be pending in this case." Hence, the defendant appears to explicitly have provided that its acquiescence would not be considered an acknowledgment of the Ohio statute's applicability so as to bar venue or jurisdictional challenges.

The Court does not find that enforcement of the forum clause would contravene a strong public policy of the forum in which the suit is brought. *Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916. As Judge Krupansky noted in *Pompei*, the forum clause also provided that the laws of the State of California would govern the distributor agreement and the constriction of that agreement. Plaintiff has not shown that Ohio's interest in this action overwhelms or is different from that of California. There has been no showing that California does not have an interest in promoting fair trade

practices, (which is the name of the chapter of the Ohio Revised Code in which the Alcoholic Beverages Franchise Act appears) or that California seeks to guarantee less than "good faith," "reasonable cause" or "reasonable notice" in the franchise agreements executed by citizens of its state. It is true that Ohio has an interest in providing a local forum for its residents to enforce their rights but this interest is not substantial enough to defeat an otherwise valid "choice of forum" *and* choice of law clause. Finally, Ohio is not unique in enacting "its own antitrust laws." See Areeda & Turner, I *Antitrust Law* 58 (1978). California has such an antitrust policy. While it is true that in the area of antitrust enforcement, federal law gives great deference to the state regulation of alcohol trade, see Areeda & Turner, *supra* at 57, 64, the instant motion presents not a choice between a state interest and a federal interest but between that of two states. Given all the other factors, the choice of forum clause does not contravene any strong public policy of the state of Ohio or the United States.

The final consideration under *Bremen* and sections 1404 and 1406 is whether the chosen forum is *"seriously* inconvenient for the trial of the action." *Bremen*, 407 U.S. at 16, 92 S.Ct. at 1916. However, the showing of inconvenience must be substantial: "In such circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 18, 92 S.Ct. at 1917. Plaintiff has not made such a showing. The claim is that by conducting the action in California, plaintiff's business would suffer. However, litigation to one degree or another subjects all parties, whether corporations or individuals, to hardship. The essential inquiry is whether plaintiff could foresee these inconveniences at the time of entering into the agreement, and it is clear that it could. Finally, since there are at least two officers of Rini Wine Co., George

Thomas and Edmund Thomas, plaintiff may need to take steps to schedule the participation at trial of only one officer at a time so the other may attend to the business. Since this action is essentially one for the termination of a distributorship agreement by Guild, it is not clear that the inconvenience of the officers of Rini outweighs that to the officers and witnesses of Guild who are in California and who would be questioned as to why, when and how they terminated the agreement with Rini.

Therefore, defendant Guild Wineries and Distilleries' Motion for Change of Venue is granted. Accordingly, the above captioned case is transferred pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of California at San Francisco.

IT IS SO ORDERED.