**KARLBERG EUROPEAN TANSPA, INC., Plaintiff,**

v.

**JK–JOSEF KRATZ VERTRIEBSGESEL-ISCHAFT MbH and Linda Colombi, Defendants.**

No. 87 C 20458.

United States District Court, N.D. Illinois, W.D.

Sept. 26, 1988.

Joseph R. Radzius, Alan I. Becker, Daniel G. Litchfield, Burditt, Bowles & Radzius, Ltd., Chicago, Ill., for plaintiff.

Paul McCambridge, Tribler & Marwedel, P.C., Chicago, Ill., for Linda Colombi.

Wilson P. Funkhouser, Jonathan Vergosen, Kenneth A. Grady, Gregory A. Bedell, Levin & Funkhouser, Ltd., Chicago, Ill., Joseph P. Garland, Lehnardt & Bauman, P.C., New York City, for JK–Josef Kratz Vertriebsgeselischaft and MbH.

ORDER

ROSZKOWSKI, District Judge.

This action comes before the court on the defendant's motion to dismiss for improper venue. For the reasons set forth below, the court denies the defendant's motion.

BACKGROUND

The parties in the instant litigation were also parties to an exclusive distributorship relationship evidenced by 1982 and 1983 distributorship contracts. The latest agreement essentially provided that the plaintiff, Karlberg European Tanspa, Inc. ("KETS"), would be the exclusive distribu-

tor in the United States of the defendant JK–Josef Kratz Vertriebsgeselischaft's ("JK") Soltron products. In turn, KETS promised not to distribute any other manufacturer's sun-tanning products or sell other products to its franchisees. Included amongst the many provisions of the contract was a forum selection clause that provided as follows:

> The courts exercising jurisdiction over the district in which JK is headquartered are responsible for hearing litigation in any and all disputes which may arise from this contract or the individual delivery agreements.

Subsequent to the signing of the 1983 distributorship agreement, the distributorship relationship broke down, resulting in KETS filing a five count complaint for breach of the distributorship agreement against JK in the Northern District of Illinois. JK moved the court to dismiss the case for improper venue pursuant to the forum selection clause. In *Karlberg European Tanspa v. JK–Josef Kratz*, 618 F.Supp. 344 (N.D.Ill.1985), Judge Moran found the forum selection clause to be valid, enforceable and applicable on KETS's complaint, thus obligating KETS to bring the suit in West Germany where JK is headquartered.

Presently, KETS brings a four count complaint against JK and Linda Columbi ("Columbi") in the Northern District of Illinois. The plaintiff charges JK with violations of the Sherman Act (15 U.S.C. §§ 1, 2), tortious interference with an employment contract and tortious interference with a prospective business advantage. The plaintiff also charges Linda Columbi with breach of her fiduciary duty.

JK moves this court to dismiss the three counts against it pursuant to the 1983 distributorship agreement's forum selection clause.

## DISCUSSION

In deciding a Fed.R.Civ.P. 12(b)(3) motion to dismiss, the court will take the allegations of the complaint as true. However, the court may examine facts outside the complaint in order to determine if venue is proper. 2A J. Moore, J. Lucas, Moore's Federal Practice ¶ 12.07 [2.–3] (2d ed. 1987).

The positions of the parties regarding the motion at bar are clear. The plaintiff asserts that the cause of actions in the instant complaint are not "disputes which ... arise from this [1983 distributorship] contract...." The defendants counter that the causes of action do arise from the 1983 distributorship contract. The parties have correctly framed the issue in part, but the instant motion requires more than a mechanical interpretation of the forum selection clause.

With regard to the interpretation of the forum clause, in a majority of past cases, when faced with a complaint containing breach of contract claims and assorted ancillary claims, courts typically conclude that these non-contract actions are intertwined with the contract claims or merely artfully drafted anti-trust or tort claims grounded in the contract. *See e.g. Stewart Organization, Inc. v. Ricoh*, 810 F.2d 1066, 1070–71 (11th Cir.1987) (includes all causes of action arising out of the business relationship evidenced by the contract); *Coastal Steel v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3rd Cir.1983), *cert. denied* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983) ("Coastal's claims ultimately depend on the existence of a contractual relationship...."). *Weidner Communications v. Faisal*, 671 F.Supp. 531, 537 (N.D. Ill.1987). (The entire case whether pleaded in contract or tort hinges upon breach of the agreements between the parties.)

The preceding cases propose that claims depending on the rights and duties created by the contract in question "arise" from that contract.

## Count I

In the instant case, the four count complaint is void of any breach of contract action. In Count I, the plaintiff brings a suit against JK for violation of the Sherman Act, 15 U.S.C. § 1 and § 2, for conspiracy to restrain trade and monopolize the sale of suntanning bed equipment, respectively. Some of the defendant's acts in furtherance of this conspiracy include:

JK's inducement of Soltron and Body Bronze to refrain from distributing JK products to KETS, JK's use of Karlberg employee Linda Columbi as an informant on Karlberg's activities and Karlberg's termination as a JK supplier. Undoubtedly, the cause of action in Count I depends, in part, on the termination of the 1983 distributorship agreement as one of the acts in furtherance of the conspiracy to restrain trade and monopolize the sale of suntanning equipment and parts. To this extent, the cause of action involves rights created by the 1983 distributorship agreement and thus "arises" from the contract. This view, however, is too narrow. The termination of the contract is only a part of the allegations making up the Sherman Act violation. Count I is not simply an example of a plaintiff manipulating a breach of contract claim into a tort or anti-trust claim as in the cases cited above. *Cf. also Karlberg*, 618 F.Supp. at 349 n. 3; *Rini Wine v. Guild Wineries*, 604 F.Supp. 1055, 1054 (N.D.Ohio 1985); *Giordono v. Witzer*, 558 F.Supp. 1261, 1264 (E.D.Penn.1983). Rather, the plaintiff, in the instant case, cites several other acts apart from the contract termination to allege the defendant's Sherman Act violations. Thus, the court is faced with a larger policy question than found in the aforementioned cases.

In sum, the question is whether the parties' private interest in litigating peripheral contract-based claims in West Germany outweighs the public's interest in the adequate enforcement of the Sherman Act. On the one hand, there is a distinct possibility that Count I will invoke some litigation regarding the rights and duties arising from the 1983 distributorship agreement. Thus, the parties, as provided in their agreement, would prefer litigation in West Germany.[1]

On the other hand, the plaintiff's cause of action only involves the distributorship agreement in part. More importantly, the plaintiff has alleged a cause of action promulgated by Congress for the purpose of protecting competition in the American marketplace. *Gordon v. New York Stock Exchange, Inc.*, 422 U.S. 659, 689, 95 S.Ct. 2598, 2615, 45 L.Ed.2d 463 (1975). "A contractual choice-of-forum should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972).

If the parties' interests in litigating contract claims in West Germany prevails, the West German court would be charged with enforcing American anti-trust law against a West German corporation.[2] With due respect to the West German Court's ability to interpret and apply American law, it is beyond cavil that the West German court would be lacking in expertise as compared to a court in the United States. *See e.g. Cutter v. Scott & Fetzer*, 510 F.Supp. 905, 908 (E.D.Wis.1981) (refused to enforce choice of forum clause, in part, because Wisconsin Federal Court is better able to consider case under Wisconsin Fair Dealership law then Ohio Federal Court); *Lulling v. Barnaby's Family Inns, Inc.*, 482 F.Supp. 318, 320–321 (E.D.Wis.1980) (refused to enforce choice of forum clause because it was only in one of several contracts and would require Illinois court to interpret Wisconsin law). Thus, if the court dismissed this action for improper venue, the court would be in effect recognizing as superior the litigant's interest in agreeing to a forum for litigating peripheral contract issues over Congress's interest in the vigorous and effective enforce-

---

1. According to the parties' briefs, KETS's breach of contract claim is presently pending in West Germany.

2. The court is assuming that such an action may indeed be brought in West Germany. The court does not presume to decide the potential choice-of-law issues facing the West German court. The court also notes the difference between a domestic forum-selection clause in a case such as *Adelson v. World Transport, Inc.*, 631 F.Supp. 504 (S.D.Fla.1986), and a foreign forum-selection clause in the instant case. A New York Federal Court is far more capable of handling a Securities Acts of 1933 and 1934 action than a West German court can administer a Sherman Act action.

ment of the anti-trust laws and in particular the Sherman Act.

This the court cannot do. The court finds the strong public policy of unfettered competition to outweigh the parties' interest in litigating contract-related issues in the forum of their choice. Accordingly, Count I shall not be dismissed on the basis of improper venue.

Count II and III

■ In Count II, the plaintiff charges the defendant JK with tortiously interfering with Karlberg's employer-employee contract with Linda Columbi. In Count III, the plaintiff charges the defendant JK with tortiously interfering with Karlberg's reasonable expectation of doing business with Body Bronze, an exclusive distributor of JK products in the United States.

Neither of these claims are dependent on rights or duties created by the 1983 distributorship agreements. Rather, they merely involve JK's breach of duties, owing in tort, not to interfere with the plaintiff's employment and business relationships. The plaintiff has not demonstrated that the causes of action in Count II or III depend on any rights or duties created by the distributorship agreement. Further, by no stretch of the imagination can Count II or III be termed semantical manipulations of actions based on the 1983 distributorship action. Thus, Counts I and II do not "arise" out of the distributorship agreement.

Accordingly, for the reasons set forth above, the court denies the defendant's motion to dismiss for improper venue.