**BANCO POPULAR DE PUERTO RICO, Plaintiff,**

v.

**AIRBORNE GROUP PLC; Airborne Industries, Ltd; Thunder and Colt, Ltd; Skyrider Airships, Inc.; and ABC Insurance Company, Defendants.**

Civ. No. 92–1471CCC.

United States District Court,
D. Puerto Rico.

April 26, 1995.

Arturo J. García–Solá, Manuel Fernández–Bared, Hato Rey, PR, for plaintiff.

Pedro J. Santa–Sánchez, Jorge I. Peirats, Jacabed Rodríguez–Coss, Hato Rey, PR, Carlos E. Jiménez, Old San Juan, PR, for defendants.

## OPINION AND ORDER

CEREZO, Chief Judge.

Plaintiff Banco Popular de Puerto Rico (Popular) contracted to purchase an airship from defendant Thunder & Colt, LTD (Thunder). This device, known as a blimp, is a helium-filled, aerial apparatus designed to attract attention to the company whose logo and name adorns its side. Plaintiff purchased the airship for promotional and advertising purposes. Unhappy with the results of the contract, plaintiff filed a complaint.

Defendants Thunder, Airborne Industries (A. Industries), Airborne Group (Airborne), and Skyrider have moved to dismiss that complaint (**docket entries 7 & 16**) on the grounds that the contract between Popular and Thunder contained a forum selection clause, England being the chosen forum, which must be enforced, and that the District Court of Puerto Rico has no personal jurisdiction over them. The court need address only one of these grounds, that relating to the forum selection clause, which all defendants, even those which were not parties to the contract, have claimed the right to invoke, as it is dispositive.

1. We take the assertions of the complaint as true, since a motion to dismiss based on a forum selection clause in a contract is founded on Fed.

## BACKGROUND

Airborne manufactures airships, lighter than air contraptions designed for, among other purposes, promotional uses. "With its ability to hold station, or circle over a chosen audience the airship provides the ultimate billboard certain to attract the eye, wherever it flies." (Thunder's Sales Brochure, docket entry 21, Ex. 1). A. Industries manufactures the envelope of the airship, and Thunder manufactures and sells the finished device that is the subject of the dispute, known as the GA–42 Airship. All of these corporations are citizens of England. Skyrider is the exclusive distributor of Thunder's products in the United States. It is a citizen of the state of Colorado.

In August of 1990 Popular directed José Colón–Fradera, President of International Balloons, Inc., to contact Frank Rider, Skyrider's President, to express Popular's interest in purchasing an airship for promotional purposes. (Complaint, ¶ 7).[1] Based on these contacts and on talks between the various principals, Popular executed a sales contract with Thunder on October 8, 1990 for a GA–42 model airship (docket entry 12, Ex. 1A (hereinafter Purchase Agreement or Agreement)).

Article 15 of the Agreement contained several warranties pertaining to the conditions of sale, the period of the warranty, and the operation and maintenance of the airship. Article 22 states, in its entirety, that "[t]his Agreement shall be governed by and construed in accordance with the laws of England and disputes hereunder or as to the construction of this Agreement shall be resolved in the Courts of England." Article 29 declared that the "Agreement shall form the entire agreement between the parties hereto."

In November of 1990, the unassembled airship arrived in Puerto Rico where a team under Thunder's direction assembled it and prepared it for flight pursuant to Article 28 of the Agreement. Popular then proceeded to publicize its ownership of the Airship.

R.Civ.P. 12(b)(6). *Lambert v. Kysar,* 983 F.2d 1110, 1112 n. 1 (1st Cir.1993).

According to plaintiff's allegation, the airship proved slower than expected, causing delays in public appearances. Further deflating plaintiff's hopes, it appears that a test flight and inspection scheduled on April 8, 1991, for renewal of the airship's airworthiness certificate, ended badly. Notwithstanding the advice of the ground crew that adverse weather conditions argued against a test flight, Popular claims that the airship was negligently piloted, resulting in severe damage to its envelope when gusty winds slammed it against a parked plane.

In late April or early May of 1991, the blimp's envelope was shipped to England for repairs. Thunder invoiced Popular for these repairs, which Popular maintained were the sole responsibility of Thunder. To help resolve this billing dispute the parties met in Miami, Florida, in June of 1991. According to Popular, during this meeting defendants repeated their prior representations that the airship was new when sold and that any hours flown prior to Popular's purchase were solely for the purpose of certification of the airship. The dispute was not resolved, and in consequence, it is alleged that defendants caused the deregistration of the airship, thereby grounding it. Plaintiff also claims that on October 19, 1991, the airship suffered a catastrophic structural failure—a vast, 29 foot rupture of its envelope while on mast.

Popular avers that subsequent investigations and laboratory tests revealed that the fabrics comprising the envelope had tensile strengths and tear resistances well under industry minimum safety standards. Thus, it claims, the airship was exposed not to have been new at the time of purchase.

Based essentially on these facts, plaintiff filed its complaint containing six claims for relief. The first alleges that the codefendants jointly and severally made false misrepresentations to induce plaintiff to enter into the Purchase Agreement. The second claim seeks nullification of the purchase agreement alleging that defendants jointly and severally misrepresented the age, condition, capabilities and other characteristics of the airship. The third claim for relief asserts breach of the warranties of the Agreement. The fourth claim is for the negligent manufacture and maintenance of the airship against defendants Airborne, A. Industries, and Thunder. The fifth claim for relief requests consequential damages for breach of contract. The sixth and last claim is against defendants' unidentified insurance company.

## I. ENFORCEABILITY OF THE FORUM SELECTION CLAUSE

The question presented deals with the effect of the forum selection clause in the contract: its validity, effect, and scope.

The forum selection clause is clear and unambiguous. "This Agreement *shall* be governed by and construed in accordance with the laws of England and disputes hereunder or as to the construction of this Agreement *shall* be resolved in the Courts of England." (Emphasis supplied.)

■ Plaintiff's principal contention is that enforcement of the forum selection clause would be unfair and unreasonable. A forum selection clause must be enforced unless (1) it was not freely negotiated or was the result of overweening bargaining power or fraud, (2) when it contravenes a strong public policy of the forum where suit is brought, or (3) in a case involving a freely negotiated international commercial agreement, when the party challenging its enforceability shows "that trial in the contractual forum will be so gravely difficult and inconvenient that he will, for all practical purposes, be deprived of his day in court." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907, 1917, 32 L.Ed.2d 513 (1972).

■ The Court in *Bremen* criticized the hostile reception historically given to forum-selection clauses by American courts, reminding lower courts that such attitude "has little place in an era when ... businesses once essentially local now operate in world markets." *Bremen*, at 12, 92 S.Ct. at 1914. It emphasized that the courts' main concern should be to give effect to the legitimate expectation of the parties, as manifested in their freely negotiated agreements, by specifically enforcing the forum clauses. *Id.* The Court observed that "in the light of present-day commercial realities and expanding international trade ... the forum selection

clause should control absent a strong showing that it should be set aside." *Bremen,* at 15, 92 S.Ct. at 1916. It is the party challenging the application of the clause who has the burden to prove that its enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching. *Id. See also, Royal Bed & Spring Co. v. Famossul Industria,* 906 F.2d 45, 49 (1st Cir.1990).

The enforcement by the courts of a freely negotiated forum selection clause also serves to avoid disputes concerning the law applicable to the resolution of conflicts arising out of the contract. As explained by the Court in *Scherk v. Alberto–Culver Company,* 417 U.S. 506, 516, 94 S.Ct. 2449, 2455, 41 L.Ed.2d 270 (1974), "[a] contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction. Furthermore, such a provision obviates the danger that a dispute under the agreement might be submitted to a forum hostile to the interests of one of the parties or unfamiliar with the problem area involved."

■ The Puerto Rico Supreme Court has similarly held that forum selection clauses are presumptively valid under Puerto Rican law, and that an opponent thereto bears an extremely heavy burden. *Unisys P.R. Inc. v. Ramallo Bros. Printing Inc.,* 129 D.P.R. ——, 91 J.T.S. 69 (1991). As, in so holding, the Puerto Rico Supreme Court "has fully adopted the federal jurisprudence on forum-selection clauses and established a doctrinal approach that is in complete accord with federal law," *Caribe BMW, Inc. v. Bayerische Motoren Werke,* 821 F.Supp. 802, 817 (D.P.R.1993), we need not face the issue whether forum selection clauses are to be treated as substantive or procedural for *Erie* purposes. *Id., see also Lambert v. Kysar,* 983 F.2d 1110, 1116 (1st Cir.1993).

■ In this case, the record shows that the clause in question was freely bargained for between Popular and Thunder. The parties held continuous conversations regarding different aspects of the transaction before the signing of the final contract. During these negotiations, they bargained at arms-length, represented by attorneys. Moreover, plaintiff was no weak party easily subject to the overweening bargaining power of its counterpart. Quite to the contrary, Popular is a solid, long standing financial institution, currently ranked as the largest locally owned business in Puerto Rico with total assets of $11,513.37 millions and annual sales in 1993 of $895.9 millions.[2] It certainly is not the passenger in the cruise ship in *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). There, even in a situation where a large company—the cruise line—relied on a forum selection clause contained in a contract of adhesion—the cruise ticket—accepted by an individual, the Court found the clause to be fundamentally fair and thus, that it could be validly enforced. The Court noted that the selected forum was where the issuer of the contract based its business and that the objecting party had notice of the clause. *Carnival Cruise Lines,* at 590–95, 111 S.Ct. at 1526–28. Clearly, if such a clause is enforceable where one party is a large corporation and the other merely an individual accepting a form adhesion contract, subject to no alteration, then here, where both parties are large corporate entities, where the clause in question was the subject of negotiations, and where the plaintiff, represented by counsel, chose to accept the contract, it is clearly enforceable.

■ Furthermore, no important public policies are contravened by enforcement of the clause. "As a corollary to the liberty of contract contemplated in the Puerto Rico Civil Code, the parties can agree in advance to a specified forum capable of resolving their disputes." *Grissom v. Colotti,* 644 F.Supp. 903, 904 (D.P.R.1986). In fact, extremely strong public policy concerns urge

---

**2.** Figures are for Popular's holding company, BanPonce, and are taken from *The 1995 Caribbean Business Book of Lists,* p. 11.

the enforcement of such clauses. "The expansion of American businesses and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.... We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts." *M/S Bremen,* 407 U.S. at 9, 92 S.Ct. at 1912–13 (also involving a clause selecting English courts as the sole forum).

Enforcement of the forum selection clause is neither unfair nor unreasonable. The mere fact that this forum may be inconvenient to plaintiff does not make the clause unreasonable, especially since the possibility of inconvenience was known and contemplated at the time of executing the Agreement. *Lambert v. Kysar,* 983 F.2d at 1120; *Royal Bed & Spring Co. v. Famossul Industria,* 906 F.2d at 49.

■ Plaintiff also argues that its choice of forum—Puerto Rico—is not affected by the forum selection clause of the agreement because said clause is permissive rather than mandatory. They rely on a line of cases, of which *Utah Pizza Service Inc. v. Heigel,* 784 F.Supp. 835 (D.Utah 1992) is illustrative, which require that a mandatory clause must contain language such as "exclusive" or "only" which show "that jurisdiction is appropriate in the designated forum and no other." *Id.* at p. 838. There are other courts, such as the Fourth Circuit in *Sterling Forest Associates, LTD v. Barnett–Range Corp.,* 840 F.2d 249 (4th Cir.1988), that have adopted a different position. In *Sterling Forest,* the Court rejected that same argument that the forum selection clause was not mandatory stating: "[i]t is a well established principle of contract construction that clauses which, as here, are knowingly incorporated into a contract should not be treated as meaningless." *Id.* at p. 251. After referring to the negotiation and preparation of the purchase agreement by the drafters and their attorneys it concluded that "the only meaningful reason for including the forum selection clause in the instant case was to make California jurisdiction and venue exclusive." *Id.* at p. 251.

In the present case, it is clear that, prior to executing the purchase agreement, the parties were contemplating the choice between two forums: Puerto Rico and England. It was not England and anywhere else, which would be the interpretation of the contractual situation in the cases cited by plaintiff. Indeed, evidence submitted by plaintiff shows that it sought to vest sole jurisdiction to the Puerto Rican courts, but was unsuccessful in these efforts (*see* docket entry 21, exhibit 6— letter of Thunder's president to plaintiff's vicepresident of marketing, where the defendant categorically states that "the factory does not see the need to change the jurisdiction of the contract to the Puerto Rican courts from the British courts," and sets forth the reason for this).

## II. The forum selection clause can be invoked by all defendants.

■ It has been held that when the alleged conduct of non-parties to a contract is closely related to the contractual relationship, all the participants, parties and non-parties, should benefit from and be subject to any forum selection clauses contained in the same. *Coastal Steel v. Tilghman Wheelabrator LTD,* 709 F.2d 190, 202–03 (3rd Cir.1983); *see also Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514, n. 5 (9th Cir.1988); *Crescent Corp. v. Proctor & Gamble Corp.,* 627 F.Supp. 745, 748 (N.D.Ill.1986). Even plaintiff admits that forum selection clauses can bind and benefit affiliated corporations of a defendant party to an agreement containing such a clause. (See docket entry 21, at 22).

In this case, it is evident that the main contractual relationship, the purchase agreement entered into between Popular and Thunder, was responsible for setting in motion all the secondary relationships that were later established, directly or indirectly, between plaintiff and the remaining co-defendants. Airborne and A. Industries, manufacturers of portions of the blimp, got involved in this dispute only because they are companies related to Thunder. Similarly, Skyrider's connection to this controversy arises out of its performance as Thunder's agent

under the Purchase Agreement.[3] Thus, if any duty is owed by these parties to Popular, as it claims in the complaint, it is only because of the interrelationship between the parties arising out of the strictures of the Purchase Agreement.

As this action in its entirety is focused on the purchase agreement, and given the fact that the only reason why the nonparty defendants are in this suit is their relationship to Thunder, either as agent or parent or sister company, all claims arising under the Agreement are therefore bound by the forum selection clause. *Coastal Steel,* 709 F.2d at 203.

III. The forum selection clause encompasses the entire complaint.

■ Plaintiff asserts that even were the forum selection clause to be held valid, the complaint should not be dismissed because not all grounds for relief sought involve contract causes of action. The court disagrees. "[C]ontract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Lambert v. Kysar,* 983 F.2d at 1121–22.

Like the dispute dealt with in *Coastal Steel,* the basic source of any duty owed by defendants to plaintiff derives from the contractual relationship structured by the Purchase Agreement. *See Coastal Steel,* 709 F.2d at 203. "If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims such as negligent design, breach of implied warranty, or misrepresentation.... [W]here the relationship between the parties is contractual, the pleading of alternative noncontractual theories of liability should not prevent enforcement of such a bargain." *Coastal Steel,* 709 F.2d at 203; *see also Caribe BMW,* 821 F.Supp. at 819.

*CONCLUSION*

Since plaintiff's action arises in its entirety under a contract that contains a clause selecting England as the forum for adjudicating all disputes arising thereunder, the action is hereby DISMISSED, without prejudice, so that it may be refiled in England. *This dismissal is contingent on the voluntary submission of ALL defendants to the jurisdiction of the courts of England.* Judgment shall be entered accordingly.

SO ORDERED.

---

**3.** Indeed, correspondence from Skyrider to plaintiff is on letterhead with a large "Thunder &

Colt" legend across its top. (docket entry 12, Ex. 12–14).