**STEREO GEMA, INC., Plaintiff,**

v.

**MAGNADYNE CORPORATION,**
**Defendant.**

**Civil No. 95–1484(HL).**

United States District Court,
D. Puerto Rico.

Sept. 23, 1996.

272

Ana M. Sabbagh–Thorne, San Juan, PR, for Stereo Gema, Inc.

Jorge I. Peirats, Pietrantoni Mendez & Alvarez, Hato Rey, PR, for Magnadyne Corporation.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is Defendant Magnadyne Corporation's motion to dismiss pursuant to Federal Rule 12(b)(3). Magnadyne is a California corporation that imports and distributes car alarms. Plaintiff Stereo Gema ("Gema") is a Puerto Rico corporation that bought and distributed Magnadyne's products in Puerto Rico. Gema brings this action for damages under the Sherman Anti–Trust Act,[1] Puerto Rico's anti-monopoly laws,[2] breach of contract, and the Puerto Rico Dealers' Act,[3] commonly known as "Law 75." Gema alleges jurisdiction both on the basis of a federal question[4] and on the basis of diversity of the parties.[5]

In its complaint Gema alleges that it was the exclusive distributor of Magnadyne products in Puerto Rico; that Gema developed the Puerto Rico market for Magnadyne's products; that Magnadyne terminated the parties' relationship without just cause; that this termination constituted a breach of con-

---

1. 15 U.S.C. § 1 et seq.

2. P.R.Laws Ann. tit. 10, §§ 257–276 (1976 & Supp.1991).

3. P.R.Laws Ann. tit. 10, §§ 278–278d (1976 & Supp.1991).

4. 28 U.S.C. § 1331.

5. 28 U.S.C. § 1332.

**273**

tract; and that Magnadyne's pricing structure with its current distributor violates both federal anti-trust and Puerto Rico anti-monopoly laws. In its motion to dismiss, Magnadyne invokes the forum selection clause in an "Agreement for Purchase of Goods on Open Book Account" that was signed by Carlos Arbucia Yero, Gema's president. Paragraph twelve of the agreement reads as follows:

> In the event that suit is instituted to enforce collection of any obligation of the Buyer to the Seller then the laws of the State of California shall be exclusively applicable with respect to such dispute. Further, all disputes between the Buyer and Seller arising out of their relationship and arising out of the terms of this Agreement or any purchase of goods from the Seller subsequent to the execution date of this Agreement, shall be submitted to a court of original jurisdiction which jurisdiction shall be the County of Los Angeles, State of California. In this regard, the parties acknowledge that Los Angeles County not only represents the principal place of business of the Seller but also the place of consummation of this Agreement; final negotiations of such terms and full performance of the Seller and delivery of said goods to Buyer's risk.

Docket no. 14. The agreement identifies Gema as Buyer and Magnadyne as Seller. In its motion to dismiss, Magnadyne argues that the agreement's forum selection clause should be enforced and the complaint should be dismissed. Gema opposes the motion and argues that enforcement of the clause would inconvenience Plaintiff and deprive it of its day in court. For the reasons set forth below, the Court grants the motion to dismiss.

## DISCUSSION

### 1. The Erie issue

At the outset, the Court must first determine what law to apply in reviewing the forum selection clause. One of Gema's claims is based on the Sherman Anti–Trust Act. To the extent that this Court's jurisdiction is based on a federal question, federal law applies. *See Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718, 720–22 (2nd Cir.1982) (applying federal common law on forum selection clauses to an anti-trust claim); *see also Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 26 n. 3, 108 S.Ct. 2239, 2242 n. 3, 101 L.Ed.2d 22 (1988) (In a case where jurisdiction was based both on diversity and a federal question, the presence of a federal question would "cut only in favor of the application of federal law.").

However, Gema also alleges jurisdiction based on diversity of the parties. In this context, the determination of what law to apply is not quite so straightforward, although the Court ultimately reaches the same conclusion. A federal court sitting in diversity must determine, pursuant to the holdings of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, whether federal or state law is controlling. Under the *Erie* doctrine, a federal court with diversity jurisdiction applies state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.,* —— U.S. ——, ——, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996). In this case, the Court must determine whether federal or Puerto Rico law on forum selection clauses is applicable.

In cases where federal law and state law coincide on the issue in question, it is unnecessary for the court to make a full *Erie* analysis. *See Lambert v. Kysar,* 983 F.2d 1110, 1116–17 (1st Cir.1993); *Instrumentation Assoc. v. Madsen Elec. (Canada) Ltd.,* 859 F.2d 4, 6–8 (3rd Cir.1988); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 201–02 (3rd Cir.1983). With regard to forum selection clauses, federal courts enforce them as a matter of federal common law. *See M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 8–18, 92 S.Ct. 1907, 1912–17, 32 L.Ed.2d 513 (1972); *Lambert,* 983 F.2d at 1116. The Puerto Rico Supreme Court has adopted the federal jurisprudence on this issue. *See Unisys Puerto Rico, Inc. v. Ramallo Brothers Printing, Inc.,* 91 J.T.S. 69, 8855–56 (1991); *Banco Popular de Puerto Rico v. Airborne Group PLC,* 882 F.Supp. 1212, 1215 (D.P.R.1995). California courts also favor the enforcement

of forum selection clauses. *See Smith, Valentino & Smith, Inc. v. Superior Court of Los Angeles County,* 17 Cal.3d 491, 495–96, 551 P.2d 1206, 131 Cal.Rptr. 374 (1976); *Bancomer, S.A. v. Superior Court,* 44 Cal. App.4th 1450, 1457, 52 Cal.Rptr.2d 435 (Cal. App. 2nd Dist.1996). Because federal courts, California state courts, and the Puerto Rico Supreme Court all favor forum selection clauses, it would appear that this Court need not resolve an *Erie* issue in this case. This is true with regard to Gema's claims for breach of contract and for violations of Puerto Rico's anti-monopoly laws.

The *Erie* issue arises, however, with regard to Gema's Law 75 claim. Law 75 contains a provision dealing with forum selection clauses. It reads in pertinent part as follows:

> Any stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void.

P.R.Laws Ann. tit. 10, § 278b–2 (Supp.1991). This provision of Law 75 disfavors forum selection clauses; federal common law favors them. Accordingly, the Court must determine whether federal common law or Puerto Rico law controls on this issue.

■ The Court is unaware of any First Circuit decisions on the enforceability of forum selection clauses in the context of a Rule 12(b)(3) motion to dismiss a Law 75 claim. The First Circuit has ruled, however, on a motion to dismiss a Law 75 claim on the grounds of *forum non conveniens.*[6] *See Royal Bed and Spring Co. v. Famossul Industria,* 906 F.2d 45 (1st Cir.1990). In *Royal Bed,* the contract at issue contained a provision designating the judicial district of Curitiba in Brazil as competent to settle any dispute between the parties. 906 F.2d at 46. The First Circuit acknowledged the Law 75

provision disfavoring forum selection clauses. *Id.* at 48. However, the court noted that *forum non conveniens* " 'is a rule of venue, not a rule of decision.' " *Id.* at 50 (quoting *Sibaja v. Dow Chem. Co.,* 757 F.2d 1215, 1219 (11th Cir.1985)). The First Circuit concluded that state *forum non conveniens* laws are not binding on federal courts sitting in diversity courts and decided the case based upon federal principles and considerations of *forum non conveniens. Id.* at 50. In its decision the court affirmed the district court's ruling that Brazil was the most convenient forum for the parties' dispute. *Id.* at 50–53. The *Royal Bed* decision indicates that the First Circuit's position is that the enforceability of forum selection clauses should be decided by federal, rather than state, rules. A subsequent First Circuit case, however, categorized the *Royal Bed* decision as "tentatively treat[ing] a forum selection clause as procedural for the limited purposes of the factor analysis required under the forum non conveniens doctrine." *See Lambert,* 983 F.2d at 1116–17 n. 10. Notwithstanding this cautionary note in *Lambert,* the Court finds the *Royal Bed* decision to be highly persuasive in the present analysis. *Royal Bed* involved a motion to dismiss a Law 75 case based on a forum selection clause that required the dispute be brought in Brazil; the present case involves a motion to dismiss a Law 75 case based on a clause that requires the dispute be brought in California. Because of the similarity of the cases, the Court finds that the enforceability of the forum selection clause at issue should be decided by federal common law.

A majority of other courts have reached similar conclusions and held that a forum selection clause is a procedural issue governed by federal law. The Second, Ninth, and Eleventh Circuits have all applied federal common law in ruling on the enforceability of these clauses. *See Jones v. Weibrecht,* 901 F.2d 17, 19 (2nd Cir.1990); *Manetti–Farrow,*

---

6. *Forum non conveniens* is the doctrine which gives a trial court discretion to dismiss a case where there is an available alternative forum in another country that is fair to the parties and substantially more convenient for the parties or the courts. *Nowak v. Tak How Investments, Ltd.,*

94 F.3d 708, 719 (1st Cir.1996). The case presently before the Court, by contrast, involves a motion to dismiss under Rule 12(b)(3) on the grounds that the case should have been brought in California.

*Inc. v. Gucci America, Inc.,* 858 F.2d 509, 512–13 (9th Cir.1988); *Stewart Organization, Inc. v. Ricoh Corp.,* 810 F.2d 1066, 1067–69 (11th Cir.1987) (en banc), *aff'd on other grounds,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Other district courts have followed suit and applied federal common law. *See Frediani & Delgreco, S.P.A. v. Gina Imports, Ltd.,* 870 F.Supp. 217, 219–20 (N.D.Ill.1994); *Knutson v. Rexair, Inc.,* 749 F.Supp. 214, 216–17 n. 1 (D.Minn.1990); *American Performance, Inc. v. Sanford,* 749 F.Supp. 1094, 1096–97 (M.D.Ala.1990); *Moretti & Perlow Law Offices v. Aleet Assoc.,* 668 F.Supp. 103, 105–06 (D.R.I.1987); *Northeast Theatre Corp. v. Edie and Ely Landau, Inc.,* 563 F.Supp. 833, 834–35 (D.Mass.1983); *Taylor v. Titan Midwest Constr. Corp.,* 474 F.Supp. 145, 147 (N.D.Tex.1979); *but see Rindal v. Seckler Co.,* 786 F.Supp. 890, 892–94 (D.Mont.1992) (Montana state law, not federal common law, would be applied to the forum selection provision); *Snider v. Lone Star Art Trading Co.,* 672 F.Supp. 977, 980–82 (E.D.Mich.1987). Judge Posner in dicta has suggested that federal law "probably" controls this issue. *Northwestern Nat'l Ins. v. Donovan,* 916 F.2d 372, 374 (7th Cir.1990). The Third Circuit has provided conflicting signals on this question. *Compare Jumara v. State Farm Ins.,* 55 F.3d 873, 877 (3rd Cir.1995) ("[T]he effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law.") *with General Engineering Corp. v. Martin Marietta Alumina, Inc.,* 783 F.2d 352, 356–57 (3rd Cir.1986) (Holding that the enforceabili-

ty of forum selection clauses is governed by Virgin Islands law, not federal common law).[7] The Eighth Circuit has also provided mixed signals on this issue. *Compare Farmland Industries, Inc. v. Frazier–Parrott Commodities, Inc.,* 806 F.2d 848, 852 (8th Cir.1986)[8] ("Whether a contractual forum selection clause is substantive or procedural is a difficult question.... Because of the close relationship between substance and procedure in this case we believe that consideration should have been given to the public policy of Missouri.") *with Sun World Lines, Ltd. v. March Shipping Corp.,* 801 F.2d 1066, 1068–69 (8th Cir.1986) (In a case with two bases for federal jurisdiction, court held that federal common law would control regardless of whether the proper basis for jurisdiction was admiralty or diversity).

■ Based both on the First Circuit's reasoning in *Royal Bed* and the position of the majority of other courts, the Court holds that a court sitting in diversity should apply federal common law to the interpretation of forum selection clauses in Law 75 cases. Thus, regardless of whether jurisdiction in this case is based on a federal question owing to the federal anti-trust claims or on diversity owing to the Puerto Rico law claims, the Court will apply federal common law. *Cf. McIntosh v. Pacific Holding Co.,* 928 F.Supp. 1464, 1474–75 (D.Neb.1996) (In a case based on an ERISA claim in which diversity jurisdiction also existed, court held that federal common law controlled.).[9]

7. Subsequent to its *Martin Marietta* decision, the Third Circuit has qualified its holding in that case as being limited to the issue of what law applies in a case between residents of the Virgin Islands and has indicated that it has not yet decided what law should be applied to a forum selection clause when the district court is sitting in diversity. *See Madsen,* 859 F.2d at 7.

8. District courts in the Eighth Circuit have not read *Farmland Industries* to conclusively hold that forum selection clauses are a substantive state law issue. *See Medicine Shoppe Int'l, Inc. v. Browne,* 683 F.Supp. 731, 732 (E.D.Mo.1988); *Giroir v. MBank Dallas, N.A.,* 676 F.Supp. 915, 921 (E.D.Ark.1987) ("the Eighth Circuit *may* have suggested in *Farmland Industries*" that forum selection clauses are substantive) (emphasis added).

9. The Supreme Court in *Stewart* acknowledged the question of what law to apply in a case with a dual bases for jurisdiction. *See* 487 U.S. at 26 n. 3, 108 S.Ct. at 2242 n. 3. In *Stewart,* which involved a transfer under 28 U.S.C. § 1404(a), jurisdiction was based both on a federal question arising out of a federal anti-trust claim and on diversity. *See id.* The Supreme Court concluded that because federal law governed the transfer issue in the state law claim and because the presence of a federal question would only support the application of federal law, it was not necessary to decide whether the existence of a dual bases for jurisdiction would alter the analysis of which law to apply. *See id.* In the present case, the Court finds that, similarly, such a decision of this issue is unnecessary because federal law on forum selection clauses applies with regard to the Puerto Rico law claims. *See also Sun World,* 801 F.2d at 1068–69 (Where federal juris-

### 2. The enforceability of the clause

 Forum selection clauses are prima facie valid, and courts should enforce them unless the opposing party can show that enforcement would be unreasonable under the circumstances.[10] *Bremen,* 407 U.S. at 10, 92 S.Ct. at 1913; *Lambert,* 983 F.2d at 1116; *Sun World,* 801 F.2d at 1067; *D'Antuono v. CCH Computax Systems, Inc.,* 570 F.Supp. 708, 711 (D.R.I.1983) (Selya, J.). The party seeking to avoid the clause has a heavy burden to convince the court that the clause should not be enforced. *Bremen,* 407 U.S. at 17, 92 S.Ct. at 1917; *Grissom v. Colotti,* 644 F.Supp. 903, 905 (D.P.R.1986); *D'Antuono,* 570 F.Supp. at 711. The opposing party must show that the clause's enforcement would be unreasonable and unjust or that the clause had been obtained through overreaching or fraud. *Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916; *Lambert,* 983 F.2d at 1119; *Jones,* 901 F.2d at 18; *Mercury Coal & Coke v. Mannesmann Pipe and Steel,* 696 F.2d 315, 317 (4th Cir.1982); *Bristol Babcock, Inc. v. Puerto Rico Elec. Power Auth.,* 930 F.Supp. 710, 711 (D.P.R.1996).

In the case before the Court, Gema argues that if the forum selection clause were enforced, it would be so inconvenienced as to be deprived of its day in court. In support of its motion, Gema has submitted the sworn declaration of Carlos Arbucia Yero ("Arbucia"), Gema's president.[11] Arbucia signed the agreement which contains the forum selection clause. In his declaration, Arbucia states that he does not speak English; that he did not understand the agreement, which is in English; that if he had been aware of the forum selection clause, he would not have signed the agreement; that a Magnadyne employee told him that if he did not sign the agreement, Magnadyne would not do business with Gema; and that therefore he was coerced into signing the agreement.

 The Court finds Gema's arguments to be unavailing. In his declaration, Arbucia also states that he is a "prudent and reasonable businessman." A prudent businessperson who signs an agreement cannot subsequently seek to avoid its enforcement on the grounds that he did not read the agreement or did not understand its terms. *Mercury Coal,* 696 F.2d at 318; *Elite Parfums, Ltd. v. Rivera,* 872 F.Supp. 1269, 1273 (S.D.N.Y. 1995); *Medical Legal Consulting Service v. Covarrubias,* 648 F.Supp. 153 (D.Md.1986); *LFC Lessors, Inc. v. Pearson,* 585 F.Supp. 1362, 1364–65 (D.Mass.1984); *D'Antuono,* 570 F.Supp. at 714; *Swiggett v. Swiggett, Inc.,* 55 P.R.R. 72, 79 (1939); *Pellicier v. Fernández,* 19 P.R.R. 111, 115 (1913). It is axiomatic that Arbucia should have determined the contents of the agreement before he signed. To allow Gema to avoid the forum selection clause would create the perverse incentive of encouraging parties *not* to read contracts before signing them so that they would subsequently have a pretext to avoid unfavorable clauses.

 Gema argues that Arbucia was coerced into signing the agreement. His only evidence in support of this claim is that he was told that if he did not sign the agreement, Magnadyne would not supply Gema with its products. A forum selection clause may not be enforced if the opposing

diction could be based both upon admiralty jurisdiction or diversity jurisdiction, federal common law was applied).

10. In a motion to transfer pursuant to 28 U.S.C. § 1404(a), a district court does not apply the *Bremen* rule to forum selection clauses. In such a motion, a forum selection clause constitutes "a significant factor that figures centrally in the district court's calculus." *Stewart,* 487 U.S. at 29, 108 S.Ct. at 2244; *Royal Bed,* 906 F.2d at 51. Additionally, the Court must consider the convenience to the witnesses, as well as public and private interests that are included in the rubric of "the interest of justice." *Stewart,* 487 U.S. at 30, 108 S.Ct. at 2244.

In the case before the Court, Magnadyne has filed a motion to dismiss, not a motion to transfer. In a motion to dismiss based on a forum selection clause, the court should apply the standard set forth in *Bremen,* not the less stringent standard in *Stewart. International Software Systems, Inc. v. Amplicon, Inc.,* 77 F.3d 112, 114–15 (5th Cir.1996); *Jones,* 901 F.2d at 19; *Manetti–Farrow,* 858 F.2d at 512 n. 2 (Holding that *Stewart* was inapplicable to a case involving a motion to dismiss); *Frediani,* 870 F.Supp. at 219. Because Magnadyne has filed a motion to dismiss, the Court applies the *Bremen* standard to the enforceability of the forum selection clause at issue.

11. Docket no. 15.

party can show that it was obtained by overreaching. *Lambert*, 983 F.2d at 1119. Mere inequality of bargaining power will not, however make a contract unconscionable; the questions are whether the parties were given an opportunity to read and understand the contract and whether the terms at issue are unreasonable. *Northwestern*, 916 F.2d at 377. Arbucia's claim that he did not know what he was signing weakens Gema's argument that Magnadyne was overreaching. The terms of the clause are clear. There is no indication that the agreement was anything but an arms-length transaction between parties with roughly comparable bargaining power. *See Lambert*, 983 F.2d at 1121. Although Arbucia may not have been aware of the agreement's provisions, he certainly should have been. Had he taken the time to ascertain the contents of the agreement, he could have attempted to negotiate any provisions that he found to be objectionable. He did not, and he must now comply with the agreement's provisions. In the present case, Gema has failed to show that Magnadyne unfairly overreached or coerced Gema into agreeing to the terms.

 Arbucia also states in his declaration that if Gema were forced to comply with the forum selection clause, it would cause undue burden, apparently because he would have to close the company down during the litigation period to go to California. The Court is not swayed by this argument. First, if Gema were to bring an action in California, its principals would not have to be present for the case's entire litigation proceeding; their presence would generally only be required at a trial. Second, a claim of inconvenience as to the forum specified in the clause does not render the clause unenforceable, especially if the parties were aware of the inconvenience at the time of the agreement. *Bremen*, 407 U.S. at 16–17, 92 S.Ct. at 1916–17; *Lambert*, 983 F.2d at 1120–21; *Bense*, 683 F.2d at 722; *Caravi Distributors v. Hitachi Home Products*, 842 F.Supp. 1492, 1496 (D.P.R.1994) ("There are, of course, the obvious inconveniences caused by the distance from Puerto Rico to California but distance *per se* is not unreasonable."). As discussed above, Gema had the opportunity to review the agreement and was free to seek changes to its terms.

The mere fact that Gema's principals may now be subject to the inconvenience and expense of travel to California is not sufficient to overcome Gema's burden to demonstrate why the forum selection clause should not be enforced.

 In summation, Gema has failed to meet its heavy burden of demonstrating that the clause's enforcement would be unreasonable and unjust or that the clause had been obtained through overreaching or fraud. *See Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916; *Lambert*, 983 F.2d at 1119. Gema may be inconvenienced by having to bring its claims in California. This inconvenience is not caused by any improper conduct by Magnadyne; rather, it appears to be due to a lack of diligence by Arbucia in his negotiations with Magnadyne. Gema cannot now escape the result of this lack of diligence.

 Lastly, the Court notes that Gema brings claims under federal anti-trust and Puerto Rico anti-monopoly laws. A court should determine whether non-contractual claims are covered by a forum selection clause. *See Caribe BMW, Inc. v. Bayerische Motoren Werke*, 19 F.3d 745, 754 (1st Cir. 1994). The pleading of a non-contractual claim will not, by itself, be sufficient to avoid a forum selection clause if the claim arises out of the parties' contractual relationship and implicates the contract's terms. *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944–45 (3rd Cir.1988). Additionally, commercial contractual issues are often intertwined with anti-trust law. *Stewart*, 810 F.2d at 1070. The clause in pertinent part reads as follows:

> Further, *all disputes* between [Gema] and [Magnadyne] arising out of their relationship and arising out of the terms of this Agreement or any purchase of goods from [Magnadyne] subsequent to the execution date of this Agreement, shall be submitted to a court of original jurisdiction which jurisdiction shall be the County of Los Angeles, State of California.

Docket no. 14 (emphasis added). The clause's phrasing gives it a broad scope. Other courts have found similarly broad language in forum selection clauses to cover

anti-trust claims. *See Stewart,* 810 F.2d at 1070–71, 1073 n. 4 (any appropriate court in New York "shall have exclusive jurisdiction over any case or controversy arising under or in connection with this Agreement"); *Bense,* 683 F.2d at 720–22 ("the exclusive venue of any suits or causes of action arising directly or indirectly from this AGREEMENT shall be in Dallas County, Texas."); *Rini Wine Co. v. Guild Wineries and Distilleries,* 604 F.Supp. 1055, 1057–59 (N.D.Ohio 1985) ("venue for any action entered under the agreement is agreed to be the State of California."). Broad language in forum selection clauses has also been held to apply to other non-contractual claims. *See Omron Healthcare, Inc. v. Maclaren Exports Ltd.,* 28 F.3d 600, 601–03 (7th Cir.1994) (Distribution agreement with a clause stating that "The parties hereto agree that all disputes arising out of this Agreement which cannot be resolved amicably between the parties shall be referred to the High Court of Justice in England" held to cover a dispute for trademark infringement); *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1358–66 (2nd Cir. 1993) (Insurance syndication agreement stating that "Each party hereto irrevocably agrees that the courts of England shall have exclusive jurisdiction to settle any dispute and/or controversy of whatsoever nature arising out of or relating to the [Name's] membership of, and/or underwriting of insurance business at, Lloyd's" was held to cover claims under civil RICO and federal securities law); *Avatar,* 857 F.2d at 944–45 (Agreement to sell real estate on commission stating that "any litigation upon any of [its] terms ... shall be maintained" in a court in Miami, Florida was held to cover claims under civil RICO).

In the case before the Court, Gema's anti-trust and anti-monopoly claims are based on an alleged difference between the price Magnadyne charged Gema under the agreement and the price Magnadyne is charging its current distributor. *See* Gema's complaint (docket no. 1), at paragraphs 20–32. The resolution of these claims will require an analysis of the Magnadyne–Gema relationship. Therefore, Gema's anti-trust and anti-monopoly claims arise out of the agreement. Accordingly, the Court finds that these claims are also covered by the forum selection clause.

WHEREFORE, the Court hereby grants Magnadyne's motion to dismiss (docket no. 11) pursuant to Rule 12(b)(3). Judgment shall be entered dismissing this action without prejudice.

**IT IS SO ORDERED.**