TRIANGLE TRADING CO.,
INC., Plaintiff,

v.

ROBROY INDUSTRIES,
INC., Defendant.

Civil No. 96–1882(SEC).

United States District Court,
D. Puerto Rico.

Jan. 23, 1997.

Sigfredo A. Irizarry, San Juan, PR, for Plaintiff.

Carlos A. Rodríguez–Vidal, Goldman, Antonetti & Cordova Law Offices, San Juan, PR, for Defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

This case is before the Court on defendant Robroy Industries Inc.'s motion to dismiss (**Docket # 8**), which was duly opposed (**Docket # 10**).[1] Defendant asserts that plaintiff's complaint should be dismissed on the grounds that (a) Triangle is not a "dealer" for purposes of the Puerto Rico Dealers' Act, 10 L.P.R.A. §§ 278–278d ("Act 75"); (b) that it is not a "sales representative" under the Puerto Rico Sales Representatives' Act, 10 L.P.R.A. §§ 279–279h ("Act 21"); and (c) that Triangle specifically agreed that any dispute arising from the sales agency agreement which is the object of this controversy would be governed by the laws of the state of Pennsylvania, and litigated therein.[2]

Plaintiff, on the other hand, argues that there is a genuine issue of material fact as to whether or not Triangle was a distributor or a sales representative under Puerto Rico law; and that the public policy embodied in these statutes is of such importance that its provisions should overrule any "choice of law" or "choice of forum" provisions to the contrary. Upon careful analysis of the relevant facts, the applicable law and the legal theories advanced by both parties, defendant's motion is hereby **DENIED**.

## Procedural History

The parties to this action entered into a sales agency agreement in 1985, whereby they agreed, *inter alia*, that plaintiff would serve as defendant's sales agent within the territory of Puerto Rico; and that any dispute arising out of this contract would be litigated in Pittsburgh, Pennsylvania and would be governed by the laws of that state. In February of 1996, defendant notified plaintiff of the cancellation of the agreement, effective March 31, 1996. Three months later, plaintiff filed suit in the Superior Court of Puerto Rico, San Juan part, alleging breach of contract under Acts 75 and 21. Defendant promptly requested that the case be removed to the United States District Court for the District of Puerto Rico, and removal was finally noted on August 22, 1996.

In its motion to dismiss, defendant argues that the complaint fails to state a claim upon which relief may be granted because it is based on inapplicable Puerto Rican statutes (Motion to dismiss, at 4). According to Robroy, plaintiff had none of the responsibilities commonly associated with a distributor under Act 75. It could not, for example, purchase products for resale; it was not required to maintain an inventory in Puerto Rico; it was devoid of authority to grant credits or rebates, fix prices, split commissions, or give

---

1. Although defendant has attached exhibits to his motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts have: complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion. This discretion generally will be exercised on the basis of a determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action. When the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion, the court is likely to accept it; when it is scanty, incomplete, or inconclusive, the court probably will reject it. 5A Charles A. Wright & Arthur K. Miller, *Federal Practice & Procedure* § 1366 (2nd ed 1990).

 More importantly, the First Circuit has held that the court may review documents "the authenticity of which [is] not disputed by the parties" without converting the motion into one for summary judgment. *Watterson v. Page*, 987 F.2d 1 (1st Cir.1993). Given that defendant merely included a copy of the contract between the parties, as well as a copy of the letter expressing defendant's desire to terminate the contract, and plaintiff does not dispute the authenticity of these documents, we will consider the motion as one to dismiss, under Rule 12(b)(6).

2. Since defendant circumscribes his argument to the "choice of forum" issue, we will only address the question of whether this controversy should indeed, be litigated in Pittsburgh, Pennsylvania.

secret refunds, concessions or inducements of any sort; and it could not deliver or ship merchandise. Neither did it assume any of the risks or responsibilities normally associated with a dealer under Act 75 (Motion to dismiss, at 7–8). Defendant further contends that since Act 21 did not become effective until December 5, 1990, it cannot be applied to the instant contract because the statute clearly expresses that its provisions "sh[ould] not be understood as an impairment to the contractual obligations that may have arisen prior to [December 5, 1990]" (Motion to dismiss, at 9).

In the alternative, defendant maintains that regardless of whether the contract is covered by the forgoing acts, its forum selection clause requires that the parties litigate this dispute in Pittsburgh, Pennsylvania (Motion to dismiss, at 10). According to Robroy, forum selection clauses must be enforced unless they contravene a strong public policy of the forum where the suit is brought, and "judges in this District and the Court of Appeals for the First Circuit have dismissed claims based on [Act] 75 on grounds of forum-selection clauses, as well as forum non conveniens, with full knowledge of the local public policy implications" (Motion to dismiss, at 12). Thus, defendant concludes, no strong public policies are contravened by the enforcement of the forum selection clause, and dismissal is warranted.

Plaintiff asserts that to determine whether Acts 75 and 21 are applicable to the instant action "will require consideration of many facts relevant to the development of the relationship between the parties over the years, not merely the documents submitted by defendant in support of its contentions" (Motion Opposing Defendant's Request for Dismissal, at 2). Plaintiff further argues that once discovery is conducted, it will be able to demonstrate that the original written agreement was modified through novation—as witnessed through the parties' actions—to the point where a "truly exclusive distributorship was established" (Opposition, at 4). Given that the exact nature of the relationship between the parties is actually the crux of this controversy, that the relevant statutes have a strong public policy content and that at least one of them clearly maintains that choice of law and choice of forum clauses shall be automatically deemed null and void, plaintiff contends that the motion to dismiss should be denied.

## Motion To Dismiss Standard

Rule 12(b)(6) motions must be examined in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires a plaintiff to assert "a short and plain statement of the claim showing that [it] is entitled to relief." 5A Wright & Miller, *supra*, at § 1356. It has been argued that "only when the pleading fails to meet this liberal standard is it subject to dismissal under Rule 12(b)(6)." *Id.* Given the forgoing standard, in examining a Rule 12(b)(6) motion, courts must construe the complaint in the light most favorable to the plaintiff and assume that its allegations are true, drawing all reasonable inferences in plaintiff's favor. *Correa–Martinez v. Arrillaga–Beléndez*, 903 F.2d 49, 51 (1st Cir.1990).

Courts have considerable discretion, under the liberal pleading standard of the Federal Rules of Civil Procedure, to decide when a complaint is formally insufficient and thus, subject to dismissal. Although the Court will not credit bald assertions or mere specious allegations, it will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir.1991).

## Applicable Law/Analysis

*A. Applicability of Act 75 and Act 21 to the instant controversy*

 Act 75 defines a "dealer" as a "person actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service." 10 L.P.R.A. § 278(a). The Puerto Rico Supreme Court has held that the fundamental criterion to be used in identifying a dealer under this section is the dealer's role in creating a favorable market and gaining consumers for the product or service

78

through the promotion and execution of sales contracts. *San Juan Merc. v. Canadian Transport Co.*, 108 D.P.R. 211 (1978); *Cobos Liccia v. De Jean Packing Co.*, 124 D.P.R. 896, 906–07 (1989). Publicity, market coordination, merchandise delivery, collections, maintenance of inventory and the promotion and execution of sales contracts are some of the duties which are commonly associated with a dealer under the Act. *Id.* Exclusivity in the distribution of a product or provision is not, however, an absolute requirement to qualify as distributor under this section. *Roberco, Inc. v. Oxford Inds., Inc.*, 122 D.P.R. 115 (1988).

■ Notwithstanding the forgoing, the definition of a dealer does not extend to a sales agent not contractually bound to purchase inventories or to keep warehouse facilities. Neither does it include employing a salesperson or assuming any of the other responsibilities that typify a dealer, if the company which the agent represents grants lines of credit and charge accounts directly to customers, or services some of the merchandise sold and contracts all commercial and institutional advertising. *Cruz Ramos v. Brother Intern. Corp.*, 445 F.Supp. 983 (D.Puerto Rico 1978); aff'd. 588 F.2d 817 (1st Cir.1978).

■ Precisely because the forgoing definition of a dealer is somewhat limited, the Puerto Rico Legislature enacted the Sales Representative Act of 1990 (Act 21). See Statement of Motives, *Laws of Puerto Rico* (December 5, 1990). This statute was meant to protect sales representatives—who "assume all the operational costs which such representation entails, such as the cost of maintaining an office, exhibition rooms, cars, office personnel, phones, electricity, water, insurance, travel costs, representation costs, office supplies and municipal patents"—from termination without just cause. *Id.* As stated previously, however, the Legislature noted that even though the Act was to take effect immediately after its approval on December 5, 1990, its provisions were not to be understood to impair those contractual obligations which might have arisen prior to its enactment. 10 L.P.R.A. 279, Article 10.

Act 21 defines a sales representative as "an independent entrepreneur who establishes a sales representation contract *of an exclusive nature*, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico." 10 L.P.R.A. § 279(a). It does not, however, define when a sales representative relationship is deemed exclusive, and local courts have yet to decipher its meaning. In interpreting contracts under Act 75, courts have nevertheless noted that exclusivity is generally apparent either from the contract or from the arrangements agreed upon between the parties. *Ballester Hermanos, Inc. v. Campbell Soup, Co.*, 797 F.Supp. 103, 105 (D.Puerto Rico 1992); *R.W. Intern. Corp. v. Welch Food, Inc.*, 13 F.3d 478 (1st Cir.1994).

■ The forgoing legal provisions clearly reflect that the determination of whether a particular plaintiff is a "dealer" under Act 75, or a sales representative under Act 21, is essentially a fact-specific one, which can rarely be rendered based on the pleadings alone. In the instant case, defendant has supported its motion with the contract between the parties and a copy of its letter terminating its agreement with Triangle. Plaintiff, on the other hand, has submitted a copy of the relevant statutes and a general sworn statement. Given the forgoing, we believe that a determination such as the one defendant asks us to make at this point would be indeed premature. Thus, we hereby **DENY** defendant's motion as to these particular issues. Nevertheless, the Court expresses no opinion at this time on whether plaintiff's claim could withstand a properly documented summary judgment motion pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

*B. Validity and interpretation of forum selection clause*

■ The issue of whether state or federal law should govern the enforceability of forum selection clauses has recently been the subject of seemingly conflicting opinions among the First Circuit and the District Court for the District of Puerto Rico. See, e.g., *Stereo Gema, Inc. v. Magnadyne Corp.*, 941 F.Supp. 271 (D.Puerto Rico 1996); *Banco Popular de Puerto Rico v. Airborne Group PLC*, 882

F.Supp. 1212 (D.Puerto Rico 1995); *Caribe BMW v. Bayerische Motoren Werke,* 821 F.Supp. 802 (D.Puerto Rico 1993); *Royal Bed and Spring Co., Inc. v. Famossul Industria e Comercio de Moveis Ltda.,* 906 F.2d 45 (1st Cir.1990).

There is no dispute as to the fact that, under the doctrine set forth in *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity must apply state substantive law and federal procedural law. *Gasperini v. Ctr. For Humanities,* —— U.S. ——, ——, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996) (referring to *Erie R. Co.*). It is also clear that where federal and state law coincide, it is unnecessary to delve into the *Erie* question of whether the matter at issue is procedural or substantive in nature. *Lambert v. Kysar,* 983 F.2d 1110, 1116–17 (1st Cir.1993). It is only as to the final determination of whether or not it is necessary to reach the *Erie* analysis at all that conflicting opinions have recently emerged.

Although in *Royal Bed,* the First Circuit had the opportunity to address the forgoing issue in the context of Act 75, it relied exclusively on federal principles of forum non convenience. 906 F.2d at 50. The Court thus held that "state forum non convenience laws 'ought not to be' binding on federal courts in diversity cases." *Id.* It did not, however, conduct a state/federal law analysis to determine whether it was necessary to apply the *Erie* doctrine to Act 75 cases pending before Puerto Rico courts.

Later on, in *Caribe BMW*—another Act 75 case—the Federal District Court for the District of Puerto Rico noted that *Royal Bed* "[ha]d not specifically resolve[d] the ... issue [of] whether or not in diversity cases the enforcement of a forum-selection clause by itself is ruled by federal or state law." 821 F.Supp. at 816. In support of this contention, the Court mentioned that in *Lambert,* decided three years after *Royal Bed,* the First Circuit did not automatically apply federal law, but rather addressed the issue of whether state and federal law conflicted in their interpretation of forum selection clauses, and ruled that they didn't.

Upon concluding that the issue of whether forum-selection clauses are procedural or substantive was still up in the air, the Court, following *Lambert,* analyzed whether Puerto Rico law conflicted with federal common law in its interpretation of forum selection clauses. *Caribe BMW,* 821 F.Supp. at 816. Based on the Puerto Rico Supreme Court decision of *Unysis P.R. Inc. v. Ramallo Brothers Printing, Inc.,* 91 J.T.S. 69 (1991), the Court concluded that "the Puerto Rico Supreme Court ha[d] fully adopted the federal jurisprudence on forum-selection clauses and established a doctrinal approach ... in complete accord with federal law, thus obviating any *Erie*-type problems at bar." *Caribe BMW,* 821 F.Supp. at 817. Having reached that conclusion, the Court went on to analyze the federal common law standard enunciated in *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and applied it to the case.

In a subsequent case, the Puerto Rico District Court once again relied on the *Caribe BMW* rationale to rule that it did not have to "face the issue whether forum selection clauses are to be treated as substantive or procedural for *Erie* purposes." 882 F.Supp. at 1215. This trend was nevertheless reversed in the recent case of *Stereo Gema, Inc.,* yet another decision involving Act 75. In this case, the Court reinterpreted *Royal Bed* and held that "the First Circuit's position [was] that the enforceability of forum selection clauses should be decided by federal, rather than state, rules." 941 F.Supp. at 274. Thus, it proceeded to solve its case based on the federal common law principles enunciated in *Bremen.*

Although the end result in both *Caribe BMW* and *Stereo Gema* was virtually identical,—the District Court applied federal common law principles based on the Supreme Court case of *Bremen*—we believe that it was unnecessary for the latter to reach the *Erie* analysis. The *Stereo Gema* Court argued that, since Act 75 clearly disfavored forum selection clauses, there was open conflict between federal and state law. But *Caribe BMW* dealt with strikingly similar issues, and yet held that there was no incom-

patibility between state and federal policy as to forum selection. We abide by the interpretation set forth in *Caribe BMW* and rule that it is unnecessary to reach the *Erie* analysis in the instant case. Given that both federal and state law principles are compatible, we will examine the relevant federal common law principles of forum selection and apply them to the instant controversy.

■ As stated in *Stereo Gema*, "[f]orum selection clauses are prima facie valid and ... should [be] enforce[d].... unless the opposing party can show that enforcement would be 'unreasonable' under the circumstances." 941 F.Supp. at 276 (referring to *Bremen*). In *Bremen*, the Supreme Court specifically enumerated three different scenarios under which the enforcement of a forum selection clause could be held unreasonable:

(1) [if] it was not freely negotiated or was the result of overweening bargaining power or fraud; (2) [if] it contravenes a strong public policy of the forum where suit is brought;[3] or (3) in a case involving a freely negotiated international commercial agreement, [if] the party challenging its enforceability shows 'that trial in the contractual forum will be so gravely difficult and inconvenient that he will, for all practical purposes, be deprived of his day in court'.

*Banco Popular*, 882 F.Supp. at 1214; referring to *Bremen*, 407 U.S. at 18, 92 S.Ct. at 1917–18; *Bristol Babcock, Inc. v. Puerto Rico Electric Power Authority*, 930 F.Supp. 710 (D.Puerto Rico 1996). As to the second requirement, the *Caribe BMW* court held that it was only applicable in a domestic context, since "those considerations [of local public policy] are not controlling in an international commercial agreement." *Caribe BMW*, 821 F.Supp. at 820 (rejecting plaintiff's claim that the enforcement of a forum selection clause in an international agreement regarding an Act 75 claim would violate Puerto Rico public policy). The *Caribe BMW* and *Royal Bed* decisions are thus,

easily distinguishable from the instant case, for they both involved international agreements and—in such a context—courts do not need to make an exception when the forum selection clause contravenes a strong local public policy.

■ In the instant case, however, we are faced with a domestic agreement in the context of a statute which contains a strong local public policy that clearly disfavors forum selection clauses, as evidenced by its statement of motives, which reads, in pertinent part, that:

"[t]he Legislative Assembly of Puerto Rico declares that the reasonable stability in the dealer's relationship in Puerto Rico is vital to the general economy of the country, to the public interest and to the general welfare, and in the exercise of its police power, it deems it necessary to regulate, insofar as pertinent, the field of said relationship, so as to avoid the abuse caused by certain practices."

1964 *Laws of Puerto Rico* 231 (referring to Act 75). This statement of motives was directly incorporated into the statute through its section 278b-2, which establishes that:

[t]he dealer's contracts referred to in this chapter shall be interpreted pursuant to and ruled by the laws of the Commonwealth of Puerto Rico, and any other stipulation to the contrary shall be void.

Any stipulation that obligates a dealer to ... litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico ... shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void.

10 L.P.R.A. § 278b-2. The Puerto Rico Supreme Court has similarly held that choice of forum and choice of law clauses are invalid when they clash with fundamental public policy considerations of the forum where the complaint is filed. *Walborg Corp. v. Tribunal Superior*, 104 D.P.R. 184, 192 (1975). In *Walborg*, the Puerto Rico Supreme Court invalidated a choice of law clause which held

---

**3.** The Supreme Court established that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit

is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916.

that all disputes would be solved according to New York law, arguing that such a clause "countervailed a public policy which the Legislative Assembly clearly considered to be of a fundamental nature." *Id.* at 193. The Court further argued that such a policy would be rendered obsolete if New York law were applied in that case. *Id.*

Section 279(f) of Act 21, on the other hand, merely establishes that "[t]he sales representation contracts referred to in this Act shall be constructed pursuant to, and shall be governed by the laws of the Commonwealth of Puerto Rico, and any stipulation to the contrary shall be null." 10 L.P.R.A. § 279f. It does not, however, directly proscribe forum selection clauses. Nevertheless, any determination as to the applicability of this section, rather than the pertinent provisions of Act 75, would be untimely at this point, given that we have not yet decided whether Act 75 or Act 21 rule over the instant controversy. Thus, as stated above, the Court expresses no opinion at this time on whether plaintiff's claim could withstand a properly documented summary judgment motion pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

Given that the public policy involved in Act 75, and the act's plain statement as to forum selection clauses, have been clearly established by both statute and judicial decision, we will defer to them and hold that the forum selection clause be rendered invalid, until and unless defendants, through a duly substantiated motion for summary judgment, demonstrate that Act 75 is not applicable to the instant controversy.

In view of the forgoing discussion, defendant's motion to dismiss (**Docket # 8**) is hereby **DENIED.**

**SO ORDERED.**